**STATE of Maine**

v.

**Richard P. KNOWLES.**

Supreme Judicial Court of Maine.

March 31, 1977.

David M. Cox, Dist. Atty., Harold C. Hamilton, Paul W. Chaiken, Asst. Dist. Attys., Bangor, for plaintiff.

Vafiades, Brountas & Kominsky by Marvin H. Glazier, Bangor, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

WERNICK, Justice.

Defendant Richard P. Knowles has appealed from a judgment of conviction entered February 3, 1976 in the Superior Court (Penobscot County) upon a jury verdict (of January 30, 1976) finding defendant guilty, as charged by indictment, of the crime of "Kidnapping While Armed with a Firearm" (17 M.R.S.A. § 2051–A).[1]

We deny the appeal.

Defendant committed the crime in question on November 28, 1974 when he was 17 years of age and thus a "juvenile" for the purposes of 15 M.R.S.A. §§ 2501 et seq.[2] Pursuant to 15 M.R.S.A. § 2601 et seq., a juvenile petition alleging commission of the acts in question was filed on December 4, 1974 in the District Court (District Three, Division of Southern Penobscot) sitting as the "juvenile court." 15 M.R.S.A. § 2551.

On January 7, 1975 the juvenile court Judge heard evidence in connection with the petition, and, as one alternative of disposition available to him under 15 M.R.S.A. § 2611,[3] he ordered defendant held for action by the grand jury. Section 2611, subd. 3.[4]

One day later, on January 8, 1975, the grand jury returned an indictment against defendant charging him with violation of 17 M.R.S.A. § 2051–A. This indictment was subsequently dismissed, on July 17, at the request of the State, because a similar indictment had been returned on April 2, 1975 purportedly to replace the January 8 indictment. The judgment of conviction here under appeal eventuates from defendant's trial, held in January, 1976, upon the April 2, 1975 indictment.

### I.

After the return of the April 2, 1975 indictment but before defendant's jury trial, the Supreme Court of the United States, on May 27, 1975, decided *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975).

In *Breed* the Supreme Court of the United States held that the "double jeopardy" clause of the Fifth Amendment, as applicable to the States through the Fourteenth Amendment, has bearing upon certain practices concerning juveniles who become subjected to criminal proceedings as if adults. Specifically, the Court decided that whenever the manner of the conduct of a juvenile hearing is such that it can, or does, result in an adjudication of juvenile delinquency, the juvenile is thereby placed in jeopardy. Subjecting the juvenile thereafter to a criminal prosecution for the same (or a lesser included) offense places the juvenile in jeopardy a second time and thus violates the federal 5th–14th amendment guarantees against double jeopardy. Under *Breed,* then, to avoid violation of the federal constitutional protection against double jeopardy in the prosecution of a juvenile as an alleged criminal, the initial juvenile proceeding from which emerges the order to hold the juvenile for action by the grand jury must be plainly identified in advance

---

**1.** Effective May 1, 1976, 17 M.R.S.A. § 2051–A was repealed by P.L.1975, c. 499 § 11.

**2.** 15 M.R.S.A. § 2502, subd. 5, defines "juvenile" as

"any person who was under the age of 18 years at the time the act or offense . . . was committed."

**3.** That section authorizes the juvenile court Judge to dismiss the action, to place the respondent on probation and continue the case for up to one year, to find probable cause and treat the juvenile as an adult, or to adjudicate him a juvenile offender.

**4.** Subsection 3, as here applicable, provided: "Find probable cause to hold the juvenile for action by the grand jury within and for the

same county. Such finding may be made if, and only if, the juvenile court concludes, and so states in its probable cause finding, that the juvenile is, at the time of the finding, a dangerous person and a menace to the safety of the community.

"Upon a finding by the juvenile court of probable cause to hold for the grand jury, all subsequent proceedings in the juvenile court shall be the same as in a criminal proceeding before the District Court upon a finding of probable cause."

A subsequent amendment requires additional findings before transfer to the grand jury may be ordered. Compare § 2611, subd. 3, as amended by P.L. 1975, c. 538.

as being limited strictly, and solely, to consideration of the question whether the juvenile is to be held for action by the grand jury. *Breed v. Jones,* supra, p. 538 n. 18, 95 S.Ct. 1779.

One of defendant's contentions, here, is that the juvenile hearing in his case was not thus limited by the juvenile court Judge [5] and, therefore, the State subjected him to double jeopardy when it subsequently tried him as an alleged criminal.

We reject this contention of defendant, as predicated in its various ramifications upon the alleged applicability of *Breed,* because we conclude that *Breed* does not have such retroactive effect as to be here controlling.

Since May 27, 1975, the date *Breed* was decided, the highest courts of two States have had occasion to consider whether, and the extent to which, *Breed* should be given retroactive application. The Supreme Court of California, relying on *Robinson v. Neil,* 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973), held *Breed* fully retroactive and reversed a conviction where both the juvenile hearing and the adult trial preceded May 27, 1975. *In re Bryan,* 16 Cal.3d 782, 129 Cal.Rptr. 293, 548 P.2d 693 (1976). In contrast, finding *Robinson v. Neil,* supra, distinguishable, the Supreme Judicial Court of Massachusetts held *Breed* prospective only. *Stokes v. Commonwealth,* Mass., 336 N.E.2d 735 (1975).[6] Further, the Massachusetts Court determined that the crucial event in terms of the application of *Breed* was the juvenile hearing rather than the criminal trial (as if an adult), reasoning that official reliance attached at the juvenile level:

"It was at that moment that the situation became irreversible, for by subjecting the defendant to former jeopardy in the . . . [juvenile court], any subsequent trial would necessarily constitute double jeopardy under the reasoning of *Breed.*" *Commonwealth v. A Juvenile (No. 2),* Mass., 351 N.E.2d 521, 525 (1976).

Thus, under the approach of the Massachusetts Court, *Breed* does not bar the adult trial after May 27, 1975 of a juvenile subjected to former jeopardy at an omnibus hearing held before May 27, 1975. *Commonwealth v. A Juvenile (No. 2),* supra.

Such are the facts here. Defendant's criminal trial occurred after May 27, 1975 (in January, 1976) but his juvenile hearing was held prior to that date (on January 7, 1975).

Faced with the position of the Massachusetts Court enunciated in *Commonwealth v. A Juvenile (No. 2),* supra, several persons bound over as adults before *Breed* but not yet tried instituted a class action habeas corpus proceeding in the United States District Court for the District of Massachusetts. They sought a federal declaration that *Breed* barred their trials. On appeal, the United States Court of Appeals for the First Circuit, Chief Judge Coffin dissenting, upheld the view of the Massachusetts Court. *Jackson v. Justices of the Superior Court of Massachusetts,* 549 F.2d 215 (1st Cir. 1977).

■ We have previously made clear that even though only a decision of the Supreme Court of the United States is the supreme law of the land on a federal constitutional issue, nevertheless

---

**5.** Although the Superior Court docket entries indicate that the juvenile hearing in this case was transcribed, the record before us does not contain that transcript. The State, however, stipulated at oral argument that the juvenile court Judge did not confine himself to transfer and probable cause at the outset of the hearing so that defendant could have been adjudged a juvenile offender, being thus placed once in jeopardy.

**6.** Courts in at least three other jurisdictions have reversed convictions based on hearings occurring before May 27, 1975 without discus-

sion of the propriety, or scope, of a retroactive application of *Breed.* See: *In the Interest of Watkins,* Miss., 324 So.2d 232 (1975); *Smith v. State,* Fla., 316 So.2d 552 (1975); *Lincoln v. State,* 138 Ga.App. 234, 225 S.E.2d 708 (1976).

On March 3, 1977 the 6th Circuit, also relying on *Robinson v. Neil,* supra, but stating that the result would be the same even if the retroactivity criteria of *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) were utilized, held *Breed v. Jones* retroactively applicable. *Holt v. Black,* 550 F.2d 1061 (6th Cir. 1977).

"in the interests of developing harmonious federal-state relationships it is a wise policy that a state court of last resort accept, so far as reasonably possible, a decision [of its federal circuit court on a federal constitutional question] . . .." *State v. Lafferty,* Me., 309 A.2d 647, 667 (1973) (as stated for the Court in the concurring opinion of Wernick, J.)

While we recognize the cogency of the dissent in *Jackson,* we conclude that, here, we should adhere to our policy of deference to First Circuit decisions since we find also persuasive the reasoning of the Supreme Judicial Court of Massachusetts as upheld by the First Circuit majority in *Jackson.* Until the Supreme Court of the United States decides otherwise, we follow the holding of *Jackson* and decide that *Breed v. Jones* is without applicability to require reversal of the instant conviction on grounds of double jeopardy.[7]

## II.

We turn to other errors assigned by defendant regarding the propriety of the grand jury's action in returning indictments against him.

As set forth above, there was a first indictment against defendant returned on January 8, 1975, one day after the juvenile court Judge ordered defendant held for action by the grand jury. Defendant asserts that this bind-over order was subjected on January 10, 1975[8] to a Superior Court review which culminated in the Superior Court's upholding the bind-over order of the juvenile court. On January 14, 1975 defendant moved to dismiss the January 8 indictment contending that (1) the Superior Court lacked subject-matter jurisdiction and (2) in any event it was erroneous to submit the matter for the consideration of the grand jury. The Justice presiding in the Superior Court denied this motion to dismiss on February 18, 1975. Eventually, however, on July 17, 1975 the Superior Court did dismiss the January 8 indictment because, as stated above, the State had requested dismissal since another indictment had been returned April 2, 1975 which purported to replace the indictment of January 8.

Apparently as a result of the July 17 dismissal of the January 8 indictment, all prior Superior Court records in the case, including the juvenile petition and accompanying findings, were "expunged." A subsequent Superior Court order, however, overrode the expungement, reinstated the records previously expunged and consolidated them with those relating to the April 2, 1975 indictment.

On September 3, 1975 defendant moved to dismiss the April 2 indictment on the grounds that the Superior Court lacked jurisdiction of the subject-matter, the grand jury's return of the indictment was illegal and the substantive allegations of the indictment were insufficient to charge a crime. That motion was denied before the commencement of trial in January 1976.

Defendant now argues to us that the substitution of the April 2 indictment for that of January 8 was error because (1) the order reinstating the expunged records deprived defendant of the benefits accorded under the then "expungement" statute, 16 M.R.S.A. § 600, and (2) the Superior Court had no power to try the April 2, 1975 indictment since (a) the expungement removed the foundation of the Superior Court's jurisdiction—the juvenile petition—and (b) the grand jury lacked authority to return a

---

7. In *Jackson,* the First Circuit intimated that certain defendants denied the benefits of *Breed* might seek relief by "a particularized showing of prejudice" if the State had gained "undue advantage" from the initial juvenile hearing. (pp. 219–220) We need not concern ourselves in the present appeal with this limited issue since the record is insufficient to assess such claims. See n. 5, supra.

8. The District Court docket entries are not included in the record. While the Superior Court docket entries do not list a review proceeding on January 10, 1975, they do cite a "Hearing on Appeal" in the Superior Court on February 14, 1975. Further the State concurs with defendant that he did seek timely review of the bind-over decision. In any event, as developed infra, we find the existence of a timely proceeding for review immaterial.

second indictment without a second, separate finding by the juvenile court that defendant should be treated as an adult pursuant to 15 M.R.S.A. § 2611, subd. 3.

A careful examination of 15 M.R.S.A. § 2661, subd. 1, the statute authorizing review of findings of the juvenile court, persuades us to reject each of defendant's above-stated contentions.

### II–A.

Section 2661, subd. 1 authorizes de novo review in the Superior Court of the juvenile bind-over decision provided that the petition for review is filed within 10 days after the bind-over ruling. In addition, the statute states:

"The finding of probable cause to hold for the grand jury, made by the juvenile court, shall remain in full force and effect unless and until there is an adjudication by a Justice of the Superior . . . Court that said finding is vacated. The case shall not be submitted . . . to the grand jury for action when a petition for review of the probable cause finding is pending, until said Justice of the Superior . . . Court has affirmed the juvenile court's finding of probable cause."

In the case before us the indictment against defendant, returned one day after the juvenile court bind-over ruling, came prior to expiration of the 10-day period in which review could be sought but before a petition for review was in fact filed. This raises the question whether § 2661, subd. 1 intends to prohibit the return of an indictment only after a petition for review is filed or whether it also contemplates that indictment is prohibited at any time during the 10-day period in which review may be sought. We conclude that the latter interpretation is the correct one.

Literally read, the two sentences quoted above appear to contradict each other. The first purports to keep the determination of the juvenile court in force until vacated by the Superior Court. Thus, it would appear that where, as here, indictment precedes the Superior Court decision regarding the propriety of the bind-over, the juvenile court determination remains in force and the indictment is proper. The second sentence, however, indicates that the petition for Superior Court review tolls the power to indict pending the outcome of that review.

We conclude that the objectives underlying § 2661, subd. 1 are best fostered by an interpretation which prohibits indictment during the 10-day period in which review may be sought as well as during such further time as the presiding Justice may have under consideration a petition for review which has been properly initiated.

The purpose of the second provision prohibiting submission of the case to a grand jury during the time a petition for review is "pending" is clear. It parallels the overall legislative desire for avoidance of adult criminal procedures in regard to juveniles. The bound-over defendant is to suffer neither that his case be revealed to grand jurors nor that he be subject to the stigma of indictment until the Superior Court, on review, determines he must.

Less clear is the intendment of the first provision giving the juvenile court's bind-over ruling full force and effect until the review adjudication of the Superior Court is forthcoming. Read narrowly, it could be taken to allow what the second provision prohibits:—return of an indictment against the bound-over juvenile before a possible determination, on review, that he shall be returned to the juvenile court. Yet, the first provision does not say in express terms that an indictment is authorized if it is returned after the juvenile court's finding of probable cause but before a review has actually been filed. It can be appropriately construed as designed to keep the juvenile court judgment in force pending Superior Court review as a basis for conferring a jurisdiction on the Superior Court to order appropriate arrangements as to detention or release, and the like. Given this logical function for the first provision and lack of any plainly expressed further import, we read it as in no way undercutting the clear purpose of the sentence which follows.

This interpretation is supported also by the general goals of the juvenile system, as articulated in pertinent part in 15 M.R.S.A. § 2501:

"The purpose . . . is to provide that in proceedings pertaining to juveniles, . . . the care, custody and discipline of said juveniles shall approximate as nearly as possible that which they should receive from their parents or custodians; and that as far as practicable, they shall be treated, not as criminals, but as young persons in need of aid, encouragement and guidance."

These purposes show that the essence of the statutory scheme is to avoid in the great majority of cases the stigma of grand jury indictment and adult criminal trial. To this end, juvenile proceedings are closed to the public and the identity of juvenile offenders may not be revealed without consent of the juvenile court. 15 M.R.S.A. § 2609. An interpretation of § 2661, subd. 1 which holds in abeyance the power to indict pending the juvenile's exhaustion of avenues by which to avoid treatment as an adult tends to promote these overall purposes.

On the basis of the foregoing analysis, we agree with defendant (but for reasons other than asserted by defendant) that the Superior Court committed error in denying defendant's motion (of January 14, 1975) to dismiss the January 8, 1975 indictment.

### II–B.

The question remains, however, whether defendant was harmed by this error, in particular since the January 8 indictment was ultimately dismissed (on July 17, 1975).

### II–B–1.

■ We find unpersuasive defendant's claim of injury as sought to be predicated on alleged error in the reinstatement of the records previously expunged as a result of the July 17 dismissal of the January 2 indictment.

First, some of the materials expunged and later reinstated were erroneously ordered expunged in the first instance.

The "expungement" statute, 16 M.R.S.A. § 600, provided for [9] nondisclosure of records in criminal proceedings following acquittal or dismissal of the charges in question. The section's avowed purpose was to restore the status quo existing prior to initiation of the charges and to prevent future use of records in connection with other civil and criminal matters.

Here, however, the expungement went beyond the clear directive of § 600 as read in conjunction with the interpretation we have given 15 M.R.S.A. § 2661 subd. 1. The Court not only deleted the dismissed indictment and subsequent pleadings but also purported to expunge the records of the juvenile court. As we have previously explained, however, the January 8, 1975 indictment was invalid in its inception, and subject to dismissal immediately upon being returned, *because the matter was prematurely presented to the grand jury* under § 2661 subd. 1. Hence, the dismissal of the January 8 indictment, as ultimately obtained on July 17, 1975, did not affect the continuing viability of the juvenile court's order binding over defendant for grand jury action. That order, and the records embodying it, should have been preserved in existence, and not expunged, until either the Superior Court Justice, on review, vacated the finding or the grand jury, *after* having the case submitted to it at an appropriate time, returned no bill. Neither event occurred in this case. It was therefore error to expunge in the first instance those portions of the record concerning the juvenile court proceedings and their subsequent review by the presiding Justice.

Secondly, defendant has not demonstrated that any harm allegedly suffered by him

---

9. *In effect at the time defendant's records were* expunged, § 600 was repealed by P.L.1975, c. 763 § 2. Because we discern no merit in defendant's claims under § 600, we do not reach the question whether, as a procedural provi-

sion, its repeal should receive retrospective application. See, e. g., *Batchelder v. Tweedie*, Me., 294 A.2d 443 (1972). See also: 16 M.R.S.A. § 607.

from the reinstatement of the expunged records should here concern us. Section 600 specifically catalogues the results to be avoided from use of criminal records:—denial of employment, widespread dissemination, loss of civil rights, impeachment of testimony, and restricted access to credit and education. Even if we assume that some of these have relevance to a criminal conviction, defendant makes no allegation that he suffered any such deprivations.

 Defendant does assert, however, that he was prejudiced because, in his view, the original expungement had removed the foundation of Superior Court jurisdiction—the juvenile petition and the bind-over finding of the juvenile court—and, therefore, reinstatement of the expunged records improperly subjected defendant to a Superior Court trial. This contention fails since, as we have already indicated, the reinstatement merely restored what had been wrongly expunged in the first instance. Thus, in correct legal contemplation the jurisdiction of the Superior Court was never really divested.

### II–B–2.

Having found without merit defendant's claims of prejudicial error in the reinstatement of certain records previously expunged, we turn to defendant's contentions of harm caused him by the alleged illegality in the grand jury's returning the indictment of April 2, 1975 as a *second* indictment.

In this regard, the immediately preceding discussion has already answered one of defendant's claims:—that the expungement of the juvenile records, by divesting the Superior Court of jurisdiction, deprived the grand jury of power to return the April 2, 1975 indictment. As stated above, the original expungement, being erroneous, did not divest the jurisdiction of the Superior Court thus to remove power in the grand jury to act.

 Defendant attacks the propriety of the grand jury's return of the April 2 in-

dictment on the further ground that the grand jury lacked power to act in the absence of a *second* bind-over order by the juvenile court. We disagree. As we have explained ante, the April 2 indictment, although chronologically a second indictment, was in legal contemplation the *first permissible* indictment in pursuance of the bind-over order of the juvenile court.[10] Thus, even if it be assumed—and we intimate no opinion in this regard—that it might be necessary that there be a new bind-over order by the juvenile court before defendant could be criminally prosecuted under a *second* indictment charging the same offense as a prior indictment *validly* returned by the grand jury pursuant to an extant bind-over order of the juvenile court, the facts of this case do not present that situation.

Defendant takes nothing by his attacks on the power of the grand jury to return the April 2, 1975 indictment.

### III.

 We reject defendant's last contention, that the indictment on which he was convicted was fatally defective because it failed to allege, in accordance with the statute under which defendant was charged, that defendant "unlawfully" transported and carried the victim.

 We decide that in those situations, as here, in which the statutory use of the word "unlawfully" is only to negative the existence of legal justification or excuse for the conduct otherwise defined to be criminal, an indictment is not fatally defective because it fails to use the statutory word "unlawfully." In such context the very existence of the charging instrument sufficiently serves the purpose intended by the statute since the fact that a charging instrument has been returned against defendant conveys to him the information that the State deems the conduct described in the indictment to be a crime, thus to be conduct neither justified nor excused in legal contemplation.

---

**10.** Defendant urges no defect by virtue of the delay between the bind-over on January 7, 1975 and the return of the indictment on April 2, 1975.

We reach this conclusion on the basis of past decisions of this Court and the provisions of 15 M.R.S.A. § 755.

In *State v. Chase,* 149 Me. 80, 99 A.2d 71 (1953), this Court held sufficient an indictment for murder which omitted the word "unlawfully." The indictment there attacked charged that defendant acted "against the peace of said State, and contrary to the form of the statute in such case made and provided." (p. 88 of 149 Me., 99 A.2d p. 76.) Reasoning that the quoted allegation was equivalent to use of the word "unlawfully", the Court concluded that the indictment was sufficient. Id. See also: *State v. Tibbetts,* 86 Me. 189, 29 A. 979 (1893).

A predecessor of 15 M.R.S.A. § 755 [11] —R.S.1944, c. 132 § 15—was in effect when *State v. Chase* was decided. Like § 755, the 1944 predecessor forbade dismissal of a charging instrument for failure to allege "against the peace" or "contrary to the form of the statute." Since in *Chase* the Court had before it an indictment which in fact contained such allegations, the Court was able to resolve the issue of the sufficiency of the indictment "unaided by the statute." (p. 88 of 149 Me., 99 A.2d 71.)

Neither in *Chase,* nor in any other decision we have discovered, has this Court squarely dealt with the question now before us:—the validity of an indictment which omits *both* "unlawfully" *and* "against the peace, etc." in a context in which the statutory use of the word "unlawfully" is designed only to negative the existence of legal justification or excuse.

Yet, the logical import of the interplay between 15 M.R.S.A. § 755 and the reasoning in *Chase* is plain. The Court in *Chase* held the allegation "against the peace, etc." to be the functional equivalent of "unlawfully" as a negative of legal justification or excuse. Section 755 and its predecessors direct that allegations such as "against the peace etc." are unnecessary "unless . . . [defendant] has been . . . injured thereby." It follows, then, that "unlawfully" as a functional equivalent of "against the peace etc." is likewise unnecessary in the absence of prejudice. Here, defendant makes no claim of prejudice.[12]

There is an additional ground for our conclusion that the instant indictment is adequate despite the omission of the word "unlawfully."

17 M.R.S.A. § 2051–A, the foundation of the instant indictment, provided:

"Whoever, if armed with a firearm, except in the case of a minor by his parent, kidnaps or unlawfully confines, inveigles,

11. Section 755, repealed by P.L.1965, c. 356 § 26 effective December 1, 1965, provided:

"No indictment or complaint shall be quashed or adjudged bad, nor shall the proceedings or judgment thereon be arrested, reversed or affected by reason of the omission or misstatement of the title, occupation, estate or degree of the accused; of the name of the municipality or county of his residence, or of the words 'feloniously,' 'force and arms,' 'against the peace' or 'contrary to the form of the statute,' if such omission or misstatement does not tend to his prejudice; nor by reason of any defect, want of form or irregularity in the venires for grand or traverse jurors, or in the issuing or return of the same, or in the drawing or summoning of grand or traverse jurors, unless it appears to the court that the respondent has been or may be injured thereby."

*The 1965 repeal of § 755 was not intended as an abandonment of its provisions.* On the contrary, the repeal occurred because the simultaneous adoption of Rule 7(c), M.R.Crim.P., effective December 1, 1965, replaced the provisions of § 755. *State v. McFarland,* Me., 232 A.2d 804, 806 (1967); Reporter's Notes to Rule 7; Glassman, Maine Practice § 7.7, p. 75 n. 30. We therefore deem § 755 of continuing force by virtue of Rule 7(c).

12. Closely analogous decisions are those in which this Court has held that particular exceptions in criminal statutes need not be negatived by allegations in the indictment. In such instances, as in the present context of the potential impact of legal justification or excuse, the conception which determines what the indictment must allege is whether the "lawmakers intended to create a general offense, *prima facie committable* by all persons, . . . at all times, or in all places, and not a limited offense, committable only by particular persons, at particular times or in particular places." *State v. Bunker,* Me., 351 A.2d 841, 844 (1976), quoting from *Toussaint v. State,* Me., 262 A.2d 123, 125 (1970). (emphasis supplied)

decoys, imprisons, transports or carries another out of the State, or from place to place within it, shall be punished by imprisonment for any term of years. The imposition or execution of such sentence shall not be suspended and probation shall not be granted."

While in § 2051–A the adverb "unlawfully" was used to modify the verbs "transports" and "carries", § 2051–A must be read in conjunction with its companion 17 M.R.S.A. § 2051 which was the substantive kidnapping statute from which § 2051–A was derived. As pertinent for present purposes, § 2051 read:

"Whoever unlawfully confines or imprisons another, or forcibly transports or carries him out of the State or from place to place within it, or so seizes, conveys, inveigles or kidnaps any person, by any means whatever and holds him for ransom or reward, shall be punished by imprisonment for life. . . . Indictments . . . may be found and tried in the county where such person was carried or brought, or in the county where the offense was committed."

It is readily apparent that the placement of the adverb "unlawfully"—as well as that of other words—differs in § 2051 and § 2051–A. Under § 2051, "unlawfully" modifies only "confines or imprisons;" the verbs "transports and carries", separated from the first phrase by a comma, are modified by the adverb "forcibly." Thus, it appears that under § 2051 it would be sufficient to allege, as was done here, that defendant carried and transported *forcibly*, rather than unlawfully.

 Our ultimate inquiry, then, is whether by enactment of § 2051–A the Legislature intended modification of the elements of kidnapping as already set forth in § 2051. We decide that it did not.

We have had previous occasion to consider the intendment of the several statutes enacted simultaneously with § 2051–A by P.L.1971, c. 539. See, e. g., *State v. Farmer*, Me., 324 A.2d 739 (1974); *State v. Maxwell*, Me., 328 A.2d 801 (1974). In *State v. Maxwell*, we described the primary purpose of those statutes as

"enlargement of *punishment* for crimes of violence by people armed with firearms . . . ." (p. 804 of 328 A.2d) (emphasis supplied)

We find nothing in § 2051–A to change this view. That section reflects only a concern to add a factor bearing upon severity of punishment, and not any independent legislative purpose to change the substantive definition of the underlying crime itself which becomes subject to enhanced punishment when the factor of "armed with a firearm" is present.

The indictment before us is sufficient.

The entry is:

*Appeal denied.*

All Justices concurring.