**STATE of Maine**

v.

**Scott N. CORLISS.**

Supreme Judicial Court of Maine.

Nov. 23, 1977.

Thomas E. Delahanty, II, Dist. Atty., R. Barrie Michelsen, Asst. Dist. Atty. (orally), Auburn, for plaintiff.

Hamilton. & Hardy by John L. Hamilton (orally), Lewiston, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

On November 24, 1976, a Superior Court jury in Androscoggin County found Scott N. Corliss, then 16 years of age,[1] guilty of committing robbery with a firearm in violation of 17 M.R.S.A. § 3401–A (P.L. 1971, ch. 539, § 19).[2] The presiding justice sentenced Corliss to five years at the Maine Correctional Center at Windham.[3] On his appeal, the defendant, citing *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), and *State v. Knowles,* Me., 371 A.2d 624 (1977), asserts that his trial and conviction in the Superior Court, in light of previous action against him in the District Court sitting as the juvenile court, violated his constitutional right not to be placed in double jeopardy.

We sustain the appeal, but on a ground other than that raised by the appellant. The Superior Court conviction must be vacated because that court never acquired jurisdiction over the juvenile defendant.

On December 8, 1975, the State filed in the District Court a petition initiating juvenile proceedings against Corliss. The petition alleged that Corliss had committed acts on December 5, 1975 sufficient to constitute the offense of robbery with a firearm if committed by an adult. On January 13, 1976, the State filed a petition for a bind-over hearing; that is, the State asked that the juvenile court bind Corliss over to the Superior Court for treatment as an adult. The juvenile court held hearings on May 3 and 4, 1976, but the record now before us does not show whether the hearings were on the juvenile petition, the State's petition for a bind-over hearing, or both. On June 1 the juvenile judge signed an order on a printed form entitled "Commitment of Juvenile Offender." By using the printed form the juvenile judge first recited that "after a hearing on said complaint, it appearing that the material allegations in said complaint are true, said child was adjudged to have committed a juvenile offense." He then ordered that Corliss be committed into the custody of the Department of Health and Welfare "a/k/a the Department of Human Services"[4] for six months, the juvenile "to reside at the Little Brother Association of Greater Portland." Corliss immediately went into the custody of the Department and was placed by it at the Little Brother home in Portland.

Unfortunately, Corliss almost immediately got into trouble at the home. In many ways, of which running away was one of

---

1. Corliss was born on March 2, 1960.

2. Repealed by P.L. 1975, ch. 499, § 19 (eff. May 1, 1976) and replaced by 17–A M.R.S.A. § 651.

3. Defendant has been out on bail since August 13, 1977.

4. The Department of Health and Welfare was redesignated the Department of Human Services by P.L. 1975, ch. 293. By § 4 of that act,

"Wherever in the Maine Revised Statutes the words 'Department of Health and Welfare' appear, they shall mean the 'Department of Human Services.'" 15 M.R.S.A. § 2611(4)(C) (1964) still authorizes the juvenile court, following adjudication, to commit the juvenile to the custody of the "Department of Health and Welfare."

the less serious, he broke the agreement he made with the home at the time he entered. On August 10, the same juvenile judge who had entered the June 1 decree rescinded it, and in a separate order, issued concurrently, found probable cause to bind Corliss over to the Superior Court. On September 13 the grand jury returned an indictment charging that Corliss had committed robbery with a firearm on December 5, 1975.

On October 14 the defendant, in the Superior Court, moved to dismiss the indictment on the ground that he had previously been adjudicated a juvenile offender based upon the same conduct, and therefore trial upon the indictment would place him in double jeopardy. After hearing, the presiding justice denied the motion.[5] The case proceeded to trial, resulting in the judgment of conviction from which the defendant now appeals.

■ Although no document of record is expressly labeled an adjudication, the June 1 commitment order shows unmistakably that the juvenile court had adjudicated Corliss a juvenile offender. Based upon that adjudication, the juvenile court ordered Corliss to commence execution of his term; i. e., he was committed to the custody of the designated executive agency for six months and he entered into that custody. At the moment on June 1, 1976 when Corliss was committed to the custody of the Department of Human Services and he started execution of the commitment order, the jurisdiction of the juvenile court ceased, and any action it subsequently purported to take was a nullity. Thus, the August 10 orders purporting to rescind the June 1 adjudication and commitment and to bind over to the Superior Court were of no effect. Consequently, the Superior Court, which has no right to indict and try a person under the age of eighteen except upon the bind-over order of the juvenile court, *Wade v. Warden of State Prison,* 145 Me. 120, 73 A.2d 128 (1950), never acquired any jurisdiction over this juvenile.

Once it has adjudicated a juvenile offense, the power of the juvenile court to modify its disposition of the juvenile is made by statute to depend upon the type of disposition which it initially made. A commitment to the Department of Human Services

"invests the receiving agency with general guardianship authority. It appears this investiture completely severs all interests of the juvenile court in the juvenile and that no ongoing control is contemplated. Thus in the case where, for example, the juvenile was not adapting to a foster home, the court apparently would have no role, at least as a juvenile court, in altering the situation." P. Hasler, *A Study of the Juvenile Laws of Maine* 28 (1971).

By contrast, the statute expressly provides that, if a juvenile is committed to the Maine Youth Center, the superintendent may for good cause petition the juvenile court for a judicial review of disposition, and the juvenile court may then redispose of the juvenile in any of the ways otherwise authorized after the original adjudication. 15 M.R. S.A. § 2611(5) (1964) (amended 1975). The express mechanism for redisposition by the juvenile court in the one case, and its absence in the other, supports the conclusion that once the juvenile court commits the juvenile to the Department of Human Services and the juvenile commences to serve his term of custody, the court's jurisdiction over the juvenile terminates, and it may not thereafter rescind the adjudication and substitute a finding of probable cause.[6] *Cf.*

---

5. Before the Law Court the State contends that the defendant failed to raise adequately a double jeopardy defense on the basis of the juvenile court June 1, 1976 order. We need not resolve that dispute since we sustain the defendant's appeal on a ground other than double jeopardy.

6. In construing the Maine statutes, little help is derived from consulting the statutes and case law of other jurisdictions, for it is common practice for statutes to include a provision expressly authorizing the juvenile court periodically to review and modify an initial placement of the juvenile into the custody of certain executive agencies. *See, e. g.,* Cal.Welfare and Institutions Code § 775 (West 1972); N.Y. Family Court Act § 756 (McKinney 1975). While on

*State v. Blanchard,* 156 Me. 30, 159 A.2d 304 (1960); *State v. Gove,* Me., 379 A.2d 152 (1977). The juvenile court's probable cause order being null and void for lack of jurisdiction, the Superior Court in turn never acquired jurisdiction over the defendant. *Cf. Wade v. Warden of State Prison, supra.*

■ The State has urged that the June 1 adjudication was itself a nullity (and therefore ineffective to exhaust the jurisdiction of the juvenile court) because the State's January petition to bind over required the juvenile court to rule upon that petition before it could adjudicate a juvenile offense. In other words, the State argues that the prosecutor and not the juvenile court had the right to control the course of the juvenile proceeding, and that until its petition to bind over was disposed of the juvenile court had no power to adjudicate Corliss as a juvenile offender. We reject this claim that the June 1 order was not an effective juvenile adjudication. The June 1 order can well be viewed as both a juvenile adjudication and also, by necessary implication, a denial of the State's petition to bind over. *Cf. State v. L\*\*\*\* D\*\*\*\*,* Me., 320 A.2d 885, 887 (1974). In any event, the statutory scheme of the juvenile laws applicable to this case clearly gives the juvenile court plenary control over the course of juvenile proceedings, as well as the ultimate power subject to review [7] to determine whether the juvenile shall be treated as an adult. Under 15 M.R.S.A. § 2601 (1964), the authorization of the juvenile court is required for filing of a petition initiating juvenile proceedings. Thereafter, the statute invests the juvenile court with sole dis-cretion over when hearings shall be held and the manner in which they shall be conducted. 15 M.R.S.A. §§ 2609, 2610 (1964). Section 2610, for example, gives the juvenile court the power (unknown to an adult court in which prosecutorial discretion is given wider scope) "at any stage of the proceedings, [to] order any suitable person to make such investigation as the court deems appropriate." In sum, the statute contemplates that the juvenile judge, and not the State, will determine whether, and when, to hold a bind-over hearing.[8]

In view of our conclusion that the Superior Court never had jurisdiction over the defendant, we direct a remand to the juvenile court for reinstatement of the juvenile adjudication. Before doing so, however, we must address the contention of the defendant that the decision in *Breed v. Jones, supra,* renders facially unconstitutional the statute under which he was adjudicated, 15 M.R.S.A. § 2611 (1964) (amended 1975). If the defendant is correct, the juvenile adjudication itself was a nullity.

The defendant, however, is not correct. His contention of facial unconstitutionality misconceives the thrust of *Breed.* In *Breed* the facet of unconstitutionality was the second jeopardy to the juvenile resulting from subjecting him to a criminal prosecution after he had been once placed in jeopardy by virtue of a proceeding conducted in the juvenile court. Thus, what was held unconstitutional in *Breed* was the criminal prosecution, not anything that had preceded it. Indeed, the indispensible premise of

---

the face of the matter, to permit such retention of jurisdiction would seem to add desirable flexibility to the juvenile court's handling of youthful offenders, the Maine legislature plainly has not seen fit to permit such retention of jurisdiction.

7. 15 M.R.S.A. § 2661 (1964).

8. *Contrast* § 3101(4)(A) and (B) of the Maine Juvenile Code, enacted by P.L.1977, ch. 520, § 1 (eff. July 1, 1978), reading as follows:

"A. When a petition alleges that a juvenile has committed an act which would be a criminal homicide in the first or 2nd degree or a Class A, B or C crime if committed by an adult, *the court shall, upon request of the* *prosecuting attorney,* continue the case for further investigation and for a bind-over hearing to determine whether the jurisdiction of the juvenile court over the juvenile should be waived. In the event of such a continuance, the court shall advise the juvenile and his parents, guardian or legal custodian of the possible consequences of a bind-over hearing, the right to be represented by counsel, and other constitutional and legal rights in connection therewith.

"B. *Every bind-over hearing shall precede and shall be conducted separately from any adjudicatory hearing.*" (Emphasis added)

*Breed* is that the juvenile court proceeding was valid and not a nullity; otherwise, the juvenile court proceeding could not have constituted the *former* jeopardy in consequence of which the subsequent criminal proceeding became the second, or double, jeopardy. *Breed,* therefore, would not render facially unconstitutional, or unconstitutional in any sense, even a statute which unequivocally requires that the juvenile court conduct only a single hearing from which could emerge either a decision transferring the juvenile for criminal prosecution or a decision adjudicating him a juvenile offender. Under *Breed,* any criminal prosecution subsequent to the juvenile court's decision to transfer the juvenile for criminal prosecution would become subject to dismissal upon a proper assertion of a claim of double jeopardy. If, however, the juvenile court disposes of the juvenile by making a juvenile adjudication, the principles of *Breed* throw no doubt on the validity of that adjudication.

■ In any event, the defendant's constitutional attack on section 2611 proceeds from an erroneous construction of that provision. Nothing in section 2611 prevents the juvenile court from conforming the hearing procedure to the obligations imposed by *Breed* and acknowledged in *Knowles:*

> "Under *Breed,* then, to avoid violation of the federal constitutional protection against double jeopardy in the prosecution of a juvenile as an alleged criminal, the initial juvenile proceeding from which emerges the order to hold the juvenile for action by the grand jury must be plainly identified in advance as being limited strictly, and solely, to consideration of the question whether the juvenile is to be held for action by the grand jury." *State v. Knowles, supra* at 626–27.

We have already noted the juvenile court's statutory authority to determine when a hearing will be held and what the substance of the hearing will be. Section 2611 is on its face merely a catalog of possible dispositions. That section may be fairly construed to permit the juvenile court, in an appropri-

ate case, to identify the juvenile proceeding plainly in advance as being limited strictly to considering whether to bind over to the Superior Court under subsection (3).

Since the Superior Court never acquired jurisdiction over the defendant, the entry must be:

Appeal sustained.

Remanded to the Superior Court to vacate conviction under 17 M.R.S.A. § 3401–A.

Further ordered that the Superior Court remand to the District Court, sitting as the juvenile court, for reinstatement of juvenile adjudication.

DELAHANTY, J., did not sit.

POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ., concurring.