STATE of Maine

v.

Roland ALLEY.

Supreme Judicial Court of Maine.

April 28, 1978.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty., Portland, Jeffrey Albanese, Law Student (orally), for plaintiff.

Dunlap, Wood & O'Brien by Mark E. Dunlap (orally), Portland, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

ARCHIBALD, Justice.

Having been indicted, tried before a jury and convicted of two counts of "gross sexual misconduct,"[1] the defendant has seasonably appealed.

We deny the appeals.

## FACTS

The offense occurred April 2, 1977, in a cell at the Cumberland County Jail which was then being occupied by the 16-year-old

---

1. "A person is guilty of gross sexual misconduct

   1. If he engages in a sexual act with another person, not his spouse, and

A. He compels such other person to submit: (1) by force and against the will of such other person . . . .."

17–A M.R.S.A. § 253(1)(A)(1).

victim, the defendant[2] and two other inmates. The only State's witness was the victim who described the two acts alleged, contending that he was compelled to participate in both by the coercive and physically abusive acts of the appellant and the two other inmates. The appellant admitted participation in one act but contended he was forced to do so by one of the other inmates and that he used no force at all against the victim. He denied absolutely committing the second act but said he witnessed such an act between the victim and another occupant of the cell.

## I–A

The Superior Court, after full hearing, affirmed a prior juvenile court finding that because of appellant's "age, maturity, experience and development,"[3] he should be held for grand jury action rather than be dealt with as a juvenile. The first issue argued on appeal is not the usual double jeopardy problem generated in adult proceedings against a juvenile but that the Superior Court ruling was error since it was unsupported by the evidence.

15 M.R.S.A. § 2661(1) provides:

"The Justice of the Superior or of the Supreme Judicial Court shall in no manner be bound by the finding of the juvenile court but shall hear the matter de novo. After hearing, said justice shall adjudicate that the juvenile court finding of probable cause to hold the juvenile for the grand jury is either 'affirmed' or 'vacated'. *The decision of the Justice of the Superior or Supreme Judicial Court shall not be subject to further review."* (emphasis supplied)

2. The defendant was born June 6, 1959. On the day of the alleged offenses he was 17 years, 9 months and 26 days old.

3. "The juvenile court may:

. . . . .

. . . Find probable cause to hold the juvenile for action by the grand jury within and for the same county. Such finding may be made if, and only if, the juvenile court concludes, and so states in its probable cause finding, that, from the totality of the child's circumstances, it appears the child's age, ma-

When there is no constitutional challenge and when merely the sufficiency of the evidence is questioned, the above emphasized language of § 2661(1) proscribes appellate review. Even if it were otherwise, the record fully supports the affirmation announced. The "Assistant Director of Cottage Life" at the Maine Youth Center, who had known the appellant over several years, testified, subject to full cross-examination, and described in some detail his past experiences with the appellant. Additionally, the Justice below had the testimony of a qualified psychiatrist who, likewise subject to cross-examination, concluded that appellant had reached his final level of maturity, was capable of acts which could constitute a threat to the community and required supervision in "a highly structured environment" where "counseling by a very strong authority figure, a very firm and consistent person" was available. The evidence was clearly sufficient to meet the statutory criteria.

There is no merit to this point.

## I–B

For the first time on appeal, and then through the medium of his reply brief, the appellant argues that the decision of the Superior Court affirming the judgment of the District Court becomes reviewable by the Law Court despite the language of Section 2661(1) "because the juvenile statute is unconstitutional" on two grounds, (1) it is both vague and overbroad, and (2), the juvenile statute does not provide for a transfer hearing separate from an adjudicatory hearing and thus violates the double jeopardy provisions of the Maine and United States Constitutions. We must agree that

turity, experience and development are such as to require prosecution under the general law; the nature and seriousness of the child's conduct constitute a threat to the community; the conduct of the child was committed in a violent manner and there is reasonable likelihood that like future conduct will not be deterred by continuing the child under the care, protection and discipline of the juvenile law processes."

15 M.R.S.A. § 2611(3).

any statute which by its own terms proscribes appellate review, could never be read as extending this proscription to a constitutional challenge.

### I–B(1)

Assuming that the provisions of Sections 2611(3) and 2661(1) are subject to constitutional attack for vagueness and/or overbreadth, we conclude that the statutory language does not suffer from either infirmity.

Section 2611(3) catalogues the general areas of inquiry appropriate for consideration by the juvenile court and Section 2661(1) merely provides for an appellate de novo hearing but obviously based upon the same criteria as those delineated in Section 2611(3). That this is the legislative purpose is apparent from the authority granted the Superior Court, namely, to either *affirm* or *vacate* the decision of the juvenile court. These statutory standards for distinguishing between adult and juvenile offenders must be conjoined with the legislative purpose to give judges a broad discretion in viewing the facts in any given case. Obviously, the Legislature recognized the great disparity between juvenile offenders not only in terms of "age, maturity, experience and development" but also in terms of potential threat to the public peace. The Legislature would also have been conscious of the institutional capabilities and the capacity of such State facilities as there are to furnish "care, protection and discipline" to the juvenile involved. If an effort had been made to be more specific, the result could well have inhibited the wise exercise of discretion by those judges charged with the heavy responsibility of reviewing the myriad of conditions under which youthful offenders appear before them.

We view the various conditions specified in Section 2611(3) as giving the judge a catalogue or "checklist" of items without weighted importance which may properly be considered in viewing the totality of the circumstances of each case. The judge may then analyze all of these factors in arriving at the ultimate judgment of whether the juvenile should be treated as an adult or

otherwise. It would have been unwise, as the Legislature obviously recognized, and particularly when dealing with juveniles, to put a strait jacket on the exercise of judicial discretion.

■ We thus hold that the statutes are neither overly vague nor overly broad.

### I–B(2)

Appellant also argues that the "second aspect of unconstitutionality" of the statutes "which confer jurisdiction on this Court [i. e., the Law Court] to review the finding of [the Superior Court] is that the juvenile statute does not provide for a transfer hearing separate from an adjudicatory hearing as required by *Breed v. Jones*, 421 U.S. 519 [, 95 S.Ct. 1779, 44 L.Ed.2d 346] (1975)."

■ From our review of the record now before us, we can only conclude that it was plainly evident and should not have been misunderstood that the hearing in neither the juvenile nor Superior Courts was adjudicatory. The sole purpose of both hearings was to determine whether the appellant should be bound over as an adult.

As was the case in *State v. Corliss*, Me., 379 A.2d 998 (1977), the statutory design of Section 2611(3) is again being challenged for the same constitutional reason. In *Corliss*, citing both *Breed v. Jones*, and *State v. Knowles*, Me., 371 A.2d 624 (1977), we upheld the constitutionality of the statute and noted:

"That section [2611(1)] may be fairly construed to permit the juvenile court, in an appropriate case, to identify the juvenile proceeding plainly in advance as being limited strictly to considering whether to bind over to the Superior Court under subsection (3)."

379 A.2d at 1002. This holding is dispositive of the appellant's argument. *See State v. Small*, Me., 381 A.2d 1130 (1978).

### II

The Justice presiding at trial had clearly defined the elements of the two types of

offenses. The victim's testimony, if believed, was adequate to support the verdicts. The jury apparently rejected the appellant's explanation of his conduct. It had a right to do so and adopt the victim's version of the acts since, as we have consistently held,

"proof beyond a reasonable doubt may rest upon the testimony of a single witness."

*State v. Blier,* Me., 371 A.2d 1091, 1093 (1977).

### III

The term "sexual act" as used in 17–A M.R.S.A. § 253(1), is defined by § 251(c) to mean (if consummated in a variety of ways) "any act of sexual gratification between 2 persons." Accordingly, the appellant requested the following instruction:

" 'Gratification' means 'the act of giving or being a source of pleasure or satisfaction.' So if you find beyond all reasonable doubt that gratification existed and that the contact was made, then you may find that a sexual act was committed."

The Justice below declined the request but did instruct in this language:

"Now you will notice that the sexual act is defined as any act of sexual gratification. It is not necessary for the state to prove that anyone derived sexual gratification from the acts alleged. It is only necessary for the state to prove that those acts were performed for the purpose of sexual gratification of the act or. . . . "

The request was motivated because the appellant had testified not only that he was an unwilling participant in the act but also that he derived no enjoyment therefrom.

Inherent in the requested instruction is the requirement of the State to prove beyond a reasonable doubt that participants subjectively derived pleasure or satisfaction from the act. We cannot believe that such an interpretation reflects legislative intent.

While it must be agreed that ordinarily words used in a statute must be given their common meaning, we have the obligation to examine the statute to determine if a contrary intent is manifest *Union Mutual Life Ins. Co. v. Emerson,* Me., 345 A.2d 504 (1975). Our purpose is to implement the legislative purpose, not to frustrate it by hypertechnical interpretations. In *State v. Tullo,* Me., 366 A.2d 843, 847–48 (1976), we held:

"Whether the literal meaning of the words of a statute will control as against a broader or more narrow interpretation of their possible intendment depends upon the policy the Legislature is seeking to implement and the goals it intends to reach through such legislation."

■ The appellant's argument, resting on a strict application of Webster's definition of "gratification" would, if adopted, emasculate the legislative purpose. For example, would it have been rational to require proof that the victim was compelled to act "by force and against [his] will," and, at the same time received "sexual gratification" since the strict statutory language required "sexual gratification between 2 persons"? Furthermore, because actual "gratification" must be purely subjective, the State could never know in fact if it had been attained. In short, the construction given by the Justice in his instructions was a correct interpretation of legislative intent.[4]

The entry is:

Appeals denied.

Judgments affirmed.

---

4. Neither the State nor the appellant has been able to cite any authority otherwise, nor has our independent research disclosed any.