STATE of Maine

v.

**Floyd DAY.**

Supreme Judicial Court of Maine.

Argued Jan. 6, 1988.
Decided March 11, 1988.

Michael E. Povich, Dist. Atty., Carletta M. Bassano (orally), Asst. Dist. Atty., Machias, for plaintiff.

William N. Ferm (orally), Ferm & McSweeney, Ellsworth, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN, and SCOLNIK, JJ.

GLASSMAN, Justice.

Floyd Day appeals from the judgment of the Superior Court, Washington County, entered on the jury's verdict finding him guilty of two counts of gross sexual misconduct, 17–A M.R.S.A. § 253(1)(B) (1983), and eight counts of unlawful sexual contact, 17–A M.R.S.A. § 255(1)(C) (1983).[1] On appeal, Day contends that the trial court erred in limiting his cross-examination of the prosecutrix and challenges the sufficiency of the evidence to support the jury's verdict. He also challenges, for the first time, the court's instructions to the jury. We conclude that the court did not abuse its discretion in limiting Day's cross-examination of the prosecutrix and that the evidence is sufficient to support the jury's verdict. We hold, however, that the court's instruction defining sexual contact constitutes obvious error, and we vacate that portion of the judgment entered on the counts charging unlawful sexual contact.

Day entered a plea of not guilty to an indictment charging him with four counts of gross sexual misconduct and twelve counts of unlawful sexual contact with the same minor victim over a period of one year. The State voluntarily dismissed six of the counts. Day was tried and convicted on the remaining two counts of gross sexual misconduct and eight counts of unlawful sexual contact, alleged to have occurred between May and December 1980. Day appeals from the judgment entered on these convictions.

We first address Day's contention that the trial court erred in limiting his cross-examination of the prosecutrix. He argues, as he did to the trial court, that the accusation made by the prosecutrix against her second stepfather in 1985 was relevant evidence tending to establish her purported motive to fabricate the charges brought against Day in 1985 for similar abuses.

The record discloses that Day married the prosecutrix's mother in 1973, when the prosecutrix was three years of age. Mrs. Day and her children moved out of Day's trailer home in January 1981. The Days were divorced later in 1981. Mrs. Day remarried in 1984, and the prosecutrix was placed in a foster home in 1985 because of allegations of sexual abuse against her new stepfather. Although the prosecutrix first revealed Day's alleged abuse of her to a babysitter in 1982, charges were not brought against Day until 1985, after the prosecutrix reported the abuse to a school guidance counselor. The prosecutrix testified that Day had abused her two to three times a week from May 1980 until January 1981, while her mother was at school or work. On cross-examination, Day was permitted to ask the prosecutrix whether her second stepfather "bothered her in a sexual way," and to determine that this alleged misconduct occurred in 1985, but was not permitted further inquiry concerning her accusations against him.

We review the trial court's ruling limiting the scope of cross-examination for abuse of discretion, and will overturn such a ruling only if it has clearly interfered with a defendant's right to a fair trial. *State v. Nason*, 498 A.2d 252, 255 (Me. 1985); *State v. White*, 456 A.2d 13, 15 (Me.1983). *See also* R. Field & P. Murray, *Maine Evidence*, § 611.1 at 233 (1987). The trial court is accorded broad discretion in determining the scope of cross-examination, including cross-examination of a minor prosecutrix in a sexual offense case. *White*, 456 A.2d at 15; *State v. Kingsbury*, 399 A.2d 873, 875 (Me.1979); M.R.Evid. 611(a), 611(b). We hold the trial court did not abuse its discretion in limiting cross-ex-

---

**1.** After the date of the charged offenses, the statutes were amended. *See* 17–A M.R.S.A. §§ 253(1)(B) and 255(1)(C) (1987).

amination of the prosecutrix as to any accusation by her against her second stepfather, when this accusation was made three years after the prosecutrix first revealed Day's alleged sexual abuse of her. *Compare White*, 456 A.2d at 14–15.

We next address Day's challenge to the sufficiency of the evidence. Our review of the entire record in the light most favorable to the State discloses that the factfinder rationally could find beyond a reasonable doubt every element of the offenses charged. *State v. Barry*, 495 A.2d 825, 826 (Me.1985).

Finally, we address the challenged jury instructions. The record reveals that the only evidence before the jury in connection with the charges of gross sexual misconduct was the direct physical contact of the genitals of the prosecutrix and of Day. Accordingly, the court did not inform the jury as to any other conduct that would constitute a sexual act. The court instructed the jury that a sexual act was "any act between two persons involving the direct physical contact between the genitals of one and the genitals of the other." This instruction tracks the language of 17–A M.R.S.A. § 251(1)(C)(1) (Supp.1987),[2] rather than the language of 17–A M.R.S.A. § 251(1)(C), in effect at the time of the alleged offenses. The statute in effect in 1980 defined a sexual act as follows:

> any act *of sexual gratification* between 2 persons involving direct physical contact between the sex organs of one and the mouth or anus of the other or direct physical contact between the sex organs of one and an instrument or device manipulated by the other. A sexual act may be proved without allegation or proof of penetration.

17–A M.R.S.A. § 251(1)(C) (1983) (emphasis added).

Similarly, the trial court tracked the language of the current statute, 17–A M.R.S.A. § 251(1)(D) (Supp.1987), when it defined sexual contact for the purposes of the unlawful sexual contact charges as "any touching of the genitals, directly or through clothing for the purpose of arousing or gratifying sexual desire *or offensive physical contact*" (emphasis added). The statute in force at the time of the alleged offenses provided a narrower definition of sexual contact: "any touching of the genitals, directly or through clothing, other than as would constitute a sexual act, for the purpose of arousing or gratifying sexual desire." 17–A M.R.S.A. § 251(1)(D) (1983).

Because Day failed to object to the jury instructions at trial, we review the instructions only for obvious error. *State v. Walker*, 512 A.2d 354, 355 (Me.1986) (citing *State v. Michaud*, 473 A.2d 399, 404 (Me. 1984); *State v. Cote*, 462 A.2d 487, 488 (Me.1983)). We have held that a failure to instruct the jury properly on the essential elements of an offense constitutes obvious error affecting substantial rights of the defendant under M.R.Crim.P. 52(b). *State v. Nickerson*, 534 A.2d 1323, 1325 (Me. 1988) (citing *Walker*, 512 A.2d at 356; *State v. Earley*, 454 A.2d 341, 343 (Me. 1983)).

■ Day contends that the omission of the words "of sexual gratification" from the court's instruction defining a sexual act constitutes obvious error. We disagree. The court's omission does not affect an essential element of the offense. The offense of gross sexual misconduct by genital to genital contact carries no require-

---

**2.** Title 17–A M.R.S.A. § 251(1)(C) provides in its entirety as follows:

  C. "Sexual act" means:

  (1) Any act between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other;

  (2) Any act between a person and an animal being used by another person which act involves direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other; or

  (3) Any act involving direct physical contact between the genitals or anus of one and an instrument or device manipulated by another person when that act is done for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact.

A sexual act may be proved without allegation or proof of penetration.

ment of a culpable mental state. *State v. Taplin*, 489 A.2d 1107, 1108 (Me.1985); *State v. Pierce*, 438 A.2d 247, 251 (Me. 1981). Rather, the purpose of including the words "of sexual gratification" in the definition of a sexual act is to exclude from the scope of the statute those acts done "for proper medical purposes or other valid reasons." [3] *State v. Keaten*, 390 A.2d 1043, 1045 (Me.1978). *See also State v. Dana*, 517 A.2d 719, 721 (Me.1986) (statute must be construed as a whole in order to give effect to legislative intent). Omission of those words did not affect the substantial rights of Day. M.R.Crim.P. 52(b); *Nickerson*, 534 A.2d at 1325.

■ However, the unlawful sexual contact convictions cannot stand. Day correctly argues that the court's use of the phrase "or offensive physical contact" in its definition of sexual contact constitutes obvious error. To convict an individual under the 1980 statute, the jury must have found that the defendant touched the victim "for the purpose of arousing or gratifying sexual desire." 17–A M.R.S.A. §§ 251(1)(D) & 255 (1983). This specified intent was an essential element of unlawful sexual contact as then defined. *State v. Bickford*, 497 A.2d 138, 140–41 (Me.1985); *State v. Lyons*, 466 A.2d 868, 870 (Me.1983); *State v. Smith*, 394 A.2d 259, 262 (Me.1978). The erroneous jury instruction created "a reasonable possibility" that the jury based its finding of Day's guilt on an erroneous conception of the law. *Walker*, 512 A.2d at 356. The jury thus may have convicted Day of a crime that did not exist under the 1980 statute. Accordingly, we hold that the instruction on sexual contact constituted obvious error under M.R.Crim.P. 52(b) and vacate that portion of the judgment entered on Day's convictions of unlawful sexual contact.

The entry is:

Judgment of conviction on Counts I–II affirmed. Judgment of conviction on Counts V–XII vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

McKUSICK, C.J., and NICHOLS, ROBERTS and WATHEN, JJ., concurring.

SCOLNIK, Justice, concurring in part and dissenting in part.

I concur in that portion of the court's opinion that vacates Counts V–XII, but dissent from the affirmance of Counts I and II of the judgment.

At the time of the alleged offense, 17–A M.R.S.A. § 251(c) defined a sexual act as an act of sexual gratification. In this prosecution for gross sexual misconduct, despite the express language of the statute, the trial judge failed to instruct the jury regarding this statutory definition. This court concludes that such failure was not obvious error because it was not an omission of an essential element of gross sexual misconduct. I disagree.

The court bases its opinion on two grounds. First, sexual gratification as a culpable state of mind is not an element of genital-to-genital gross sexual misconduct, and second, the Legislature's purpose in employing the words "of sexual gratification" was to exclude from the scope of the statute acts done "for proper medical or other valid reasons". Although we have held that a culpable state of mind was not a requirement of gross sexual misconduct, an examination of those cases in which we have so held makes clear that they have no application to the present case. In *State v. Saucier*, 421 A.2d 57, 59 (Me.1980), cited in *State v. Pierce*, 438 A.2d 247, 251 (Me. 1981), the focus of the discussion was an analysis of section 11(5) of the Maine Criminal Code, now codified as 17–A M.R.S.A. § 34(5) (1983). Because the gross sexual misconduct statute did not expressly prescribe a culpable state of mind, such an analysis was necessary in order to determine whether a culpable state of mind was nevertheless required. What was then section 11(5) read, in pertinent part, as follows:

---

**3.** The recent amendment to 17–A M.R.S.A. § 251(1)(C) reflects the legislature's awareness

that only the third definition of sexual act requires the limiting language.

If a statute defining a crime in this code does not expressly prescribe a culpable mental state with respect to some or all of the elements of the crime, a culpable state of mind is nevertheless required ... unless:

A. The statute expressly provides that a person may be guilty of a crime without culpability as to those elements; or

B. A legislative intent to impose liability without culpability as to those elements otherwise appears.

We concluded in *Saucier* that the Legislature purposefully omitted a culpable state of mind from the gross sexual misconduct statute because the statute was "based on the premise that one person cannot accidentally or innocently induce another person to engage in sexual intercourse by means of a threat." *Saucier*, 421 A.2d at 59. Because the criminal code, 17–A M.R.S.A. § 35 (codified at section 10 at the time of these offenses), recognizes only four culpable states of mind, namely, "intentionally", "knowingly", "recklessly", and "criminal negligence", *Saucier*'s holding thus embraced only those four classifications.

The present case is clearly distinguishable from *Saucier*. *Saucier*, and the cases preceding and following it, required a section 11(5) analysis because of the absence of an expressly prescribed culpable mental state from the gross sexual misconduct statute. In the case before the court, unlike *Saucier*, the requirement that the act be one of sexual gratification is expressly prescribed in plain language. It is therefore unnecessary to undertake a section 11(5) analysis by examining the legislative history to ascertain the intent of the Legislature since the legislative purpose is easily found in the plain express language of the statute. *State Farm Mutual Automobile Ins. Co. v. Universal Underwriters Ins. Co.*, 513 A.2d 283, 286 (Me.1986); *Stone v. Board of Registration of Medicine*, 503 A.2d 222, 227 (Me.1986). Moreover, the culpable states of mind embraced by our holding in *Saucier* perforce only include those limited culpable states of mind estab-

lished by the Legislature in section 35. The Legislature has *not* classified "sexual gratification" as a culpable state of mind, and the court is mistaken insofar as it assumes that our holding with respect to culpable state of mind in *Saucier* encompassed "sexual gratification".

By defining a sexual act as one of sexual gratification, the Legislature clearly intended that the State be required to prove, as an essential element of the crime, that the conduct charged was not innocent in nature. The statute under consideration here is not based on the premise that genital-to-genital contact cannot occur accidentally or innocently. *See State v. Keaten*, 390 A.2d 1043, 1045, n. 6 (Me.1978) (because force and consent not an issue, when a defendant is charged with gross sexual misconduct under 17–A M.R.S.A. § 253(1)(B), "some additional prophylactic for innocent conduct may have been thought [by the Legislature to be] desirable"); *compare Saucier*, 421 A.2d at 59 (statute based on premise that one person cannot accidentally or innocently induce another to engage in sexual intercourse by means of a threat). Moreover, we have held that a trial court correctly interpreted the legislative intent in a gross sexual misconduct case when it instructed the jury that the State was required to prove that the acts alleged, objectively viewed, were performed for the purpose of sexual gratification. *State v. Alley*, 385 A.2d 1175, 1178 (Me.1978).

The court's opinion impliedly concludes the Legislature assumed that no act of genital-to-genital contact could be innocent or accidental. Although examples of such contact without sexual gratification may be difficult to perceive, it is not the court's function to envision a scenario of factual circumstances in which innocent or accidental contact is possible. However, one such contact that comes to mind is that which could result from the accidental contact by a sleeping parent with a child of tender years who climbed into its parents' bed during the night, with the circumstances being brought to light subsequently by a vengeful, estranged spouse. There are undoubtedly other hypothetical circumstances that are equally plausible.

The fact that the Legislature has seen fit to amend the definition of "sexual act" to eliminate the requirement of sexual gratification from genital-to-genital gross sexual misconduct is not useful in ascertaining the intent of the prior Legislature that enacted the unambiguous statutory definition which was in effect at the time of this alleged offense. *Hammond Lumber Co. v. Finance Authority of Maine*, 521 A.2d 283, 289 (Me.1987) (later legislative enactments can aid statutory interpretation only if there is ambiguity in language being interpreted). No basis exists for treating as surplusage words of plain meaning expressly made a part of a definition in a penal statute. "The effect of a penal statute cannot be extended or restricted beyond the plain meaning of the language chosen by the Legislature." *State v. Vainio*, 466 A.2d 471, 474 (Me.1983), *cert. denied*, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984). The plain meaning of section 251(c) imposes limits on this court's interpretive discretion, *State v. Williams*, 433 A.2d 765, 768 (Me.1981), and we should not overstep these limits in a creative attempt to explain away the clear import of the statutory language here at issue.

I conclude that the court's omission of an instruction regarding "sexual gratification" was a failure to instruct the jury on an essential element of the offense that constitutes obvious error affecting substantial rights of the defendant. Accordingly, I would vacate Counts I and II of the judgment, as well as Counts V–XII.