STATE of Maine

v.

Paul A. LINDSEY.

Supreme Judicial Court of Maine.

April 8, 1980.

Argued March 18, 1980.

Decided April 8, 1980.

David M. Cox, Dist. Atty., Eugene W. Beaulieu (orally), Gary F. Thorne, Asst. Dist. Atty., Bangor, for plaintiff.

Jim Mitchell and Jed Davis, P. A., by James E. Mitchell (orally), Augusta, for defendant.

Before McKUSICK, C. J., and NICHOLS and GLASSMAN, JJ.

McKUSICK, Chief Justice.

A Penobscot County indictment charged defendant with one count of rape, 17–A M.R.S.A. § 252 (Supp.1979), and two counts of kidnapping, id. § 301.[1] All three counts

---

1. The indictment alleged:

. . . Count I

That on or about the 4th day of August, 1976, in the County of Penobscot, State of Maine, PAUL A. LINDSEY, *while using a firearm against* [Martha], did compel said [Martha], not his spouse, to engage in sexual intercourse by threat that death would imminently be inflicted on said [Martha].

. . . Count II

That on or about the 4th day of August, 1976, in the County of Penobscot, State of Maine, PAUL A. LINDSEY did knowingly restrain [Cecile] *with the use of a firearm against* the said [Cecile], with the intent to facilitate the commission of another crime, to wit, the rape of [Martha].

. . . Count III

That on or about the 4th day of August, 1976, in the County of Penobscot, State of Maine, PAUL A. LINDSEY did knowingly restrain

also alleged that defendant had committed those Class A crimes with the use of a firearm, a punishment enhancing factor that if proven would require a minimum sentence of 4 years imprisonment. *Id.* § 1252(5).[2] At defendant's jury trial in mid-December 1976 the presiding justice at the end of the evidence ordered defendant's acquittal on the punishment enhancing factor, on the ground of insufficiency of the evidence. Since the jury had before it an abundance of evidence that a handgun was involved in the incident giving rise to the indictment, the fatal insufficiency necessarily related only to the question whether that weapon was operable. *See id.* § 2(12–A).[3] The presiding justice refused defendant's demand for a mistrial and submitted the case to the jury, omitting from both his instructions and the verdict form any reference to the punishment enhancing factor. The jury convicted defendant on all three counts. On his present appeal[4] defendant attacks that conviction, claiming that he was irreparably prejudiced by the inclusion in the indictment of later unproven allegations that the crimes were committed with the use of a firearm, and that the jury lacked sufficient evidence to convict him. We have carefully considered both contentions in all their several forms and find neither to be of merit. We accordingly affirm the judgment of conviction.

I.

■ We can find no prejudice to defendant arising from the fact that the indictment originally alleged the use of a firearm. Before the jury's deliberation, those allegations were in effect read out of the case by the presiding justice's entry of an order of acquittal on that punishment enhancing factor. Thereafter, he carefully instructed the jury on the elements of the crimes of rape and kidnapping, scrupulously avoiding any reference to the firearm allegations. Also, at the outset of his instructions, he reminded the jury that the indictment, which had been read to them at the opening of the trial, was not evidence.

Before instructing the jury the justice had informed counsel of how he proposed to handle the matter in his instructions and in the verdict form, and he accorded defense counsel full opportunity to have the jury specifically instructed that the punishment enhancing factor had been eliminated from the case. The experienced defense counsel

---

[Martha] *with the use of a firearm against* the said [Martha], with the intent to subject the said [Martha] to conduct defined as criminal in Chapter 11, Title 17A, Maine Revised Statutes Annotated, to wit, rape.
(Emphasis added)

**2.** 17–A M.R.S.A. § 1252(5) provides in pertinent part:

[I]f the State pleads and proves that a Class A . . . crime was committed with the use of a firearm against a person, the minimum sentence of imprisonment, which shall not be suspended, shall be as follows: When the sentencing class for such crime is Class A, the minimum term of imprisonment shall be 4 years . . . .

**3.** 17–A M.R.S.A. § 2(12–A) *defines a firearm as* follows:

"Firearm" means any weapon, whether loaded or unloaded, which will expel a projectile by the action of an explosive and includes any such weapon commonly referred to as a pistol, revolver, rifle, gun, machine gun or shotgun. Any weapon which can be readily made into a firearm by the insertion of a firing pin, or other similar thing in the

actual possession of the actor or an accomplice, is a firearm.

**4.** Defendant's original appeal, filed promptly after his original sentencing on January 26, 1977, was later dismissed for want of prosecution. In a subsequent postconviction habeas corpus proceeding, *Lindsey v. State,* Penobscot Superior Court, Docket No. CV–79–58, an active retired justice of the Supreme Judicial Court (1) found that the justice presiding at defendant's trial had in the six-week period between trial and sentencing "lost track of the fact that Lindsey had been acquitted of the charge that the crimes had been committed with the use of a firearm"; and (2) *inter alia* ordered defendant's resentencing by a different Superior Court justice and the reinstatement of defendant's appeal from his conviction. At the resentencing on November 2, 1979, the second Superior Court justice imposed for the rape conviction a 10–year sentence, as compared with the original 12–year sentence, and imposed the same 6–year concurrent sentences for the kidnapping convictions. Defendant prosecutes the present appeal from the judgment of conviction entered on the resentencing.

made a tactical decision to decline that opportunity. In all these circumstances the presiding justice acted well within the scope of his discretion in denying defendant's motion for a mistrial. *State v. Gaddis*, Me., 322 A.2d 96 (1974); *State v. Heald*, Me., 292 A.2d 200 (1972). "Appellate courts should be slow to impute to juries a disregard of their duties, and to trial courts a want of . . . perspicacity in appraising the jury's conduct." *Id.* at 203, quoting Justice Brandeis in *Fairmount Glass Works v. Cub Fork Coal Co.*, 287 U.S. 474, 485, 53 S.Ct. 252, 255, 77 L.Ed. 439 (1933).

In the final analysis defendant's argument comes down to asserting that the mere allegation of the use of a firearm in an indictment, read as it routinely is to the jury at the outset of trial, is so inherently and inevitably prejudicial to a defendant that a trial for the basic crime charged can never be a fair one if the State fails to present enough evidence to go to the jury on the punishment enhancing factor. Precisely the same contention could be made that an accused cannot get a fair trial on any lesser included offense because prejudice against him is implanted in the jurors' minds by the reading of the original charge of a greater unproved offense. We reject any such automatic ground for a new trial. *See State v. Pinnette*, Me., 340 A.2d 17 (1975); *State v. Doyon*, Me., 221 A.2d 827 (1966). We have confidence that the jury under proper instructions can treat a criminal complaint or indictment as nothing more than what it legally is; namely, the pleading initiating a criminal case. Putting out of their minds any "slant" derived from the reading of an indictment as far indeed from being jurors' most difficult task.

The presiding justice pursued an entirely proper course in granting an acquittal on the sentence enhancing factor and in remaining silent about that factor in his charge. An alternative approach that he might have followed would have been to "charge out" the enhancement factor from the case. In other words, he could, in instructing the jury, have specifically identified those elements of the indictment for which insufficient evidence had been presented and upon which therefore the jury could not convict. *See State v. Doyon, supra* at 830. Generally, that alternative would be less desirable because of the complications it would introduce into the jury instructions and the potential risk of jury confusion therefrom. Following the acquittal route does, however, still leave open the question whether the presiding justice should tell the jury that he has ordered an acquittal on the enhancement factor. The answer to that question depends almost entirely on the justice's own appraisal of the circumstances of the particular trial, but in general no purpose would be served by an affirmative answer. In most cases the presiding justice may well leave the choice to defense counsel. In the case at bar, "by offering supplemental instructions to undo any deleterious effect of the earlier reading [of the indictment], the [p]residing [j]ustice walked the second mile in an effort to do justice." *State v. Pinnette, supra* at 24.

The verdict form submitted to the jury sought their determination of guilt *vel non* for the crimes of simply "rape" and "kidnapping", not "rape with the use of a firearm" or "kidnapping with the use of a firearm." It was thus only for the crimes of rape and kidnapping without any punishment enhancing factor, that the jury, deliberating under unimpeachable instructions, convicted defendant. Our conclusion that defendant was validly convicted of those crimes, without any punishment enhancement, is not affected by the fact that both the court reporter and the clerk acted upon an erroneous assumption that the jury verdict was "guilty as charged" in the indictment, including the enhancement. There is nothing to suggest seriously that the jury were in any way uncertain that they were not finding guilt of anything more than simple rape and simple kidnapping. Any error that the presiding justice may have made by originally sentencing defendant as if he had been convicted of rape and kidnapping "with the use of a firearm" was corrected by the resentencing by a second Superior Court justice. Defendant takes nothing on his first claim on appeal.

## II.

 We also reject defendant's second claim on appeal, that there was insufficient evidence to establish the elements of rape by threat. Taking the evidence most favorably to the State, as this appellate court must, *see State v. Smith*, Me., 400 A.2d 749, 755 (1979), we find the record reveals the following train of events on the evening of August 4, 1976. The 37–year–old defendant gave a ride to two 15–year–old girls, Martha and her companion Cecile, who were hitchhiking near Augusta. After stopping to buy beer, the three decided to drive to Brooks, where defendant said he could buy marijuana. On the way, however, defendant turned his car off the highway, whereupon the girls asked to be taken back to Augusta. Defendant refused. After stopping in a deserted location, defendant pulled out a handgun that he claimed was a .38 caliber he carried for his protection. He ordered the girls to roll up the car windows and lock the doors. He pointed the gun at Martha's head and said he wanted to have intercourse with one of them. When Cecile claimed to be sick, she was told to climb, or was thrown, into the back seat. Defendant stated that he was going to kill them both and bury them in the surrounding woods. He threatened to lock Cecile in the trunk of the automobile. When Martha refused defendant's order to remove her clothing, he again threatened to kill her, grabbed her around the neck, and threw her against the door. He also struck her in the back of the head several times with the gun. Martha partially removed her clothes and defendant had intercourse with her. Afterwards, he drove a ways down the road. After defendant let them out of the car, the girls flagged down a passing vehicle and were taken to a deputy sheriff's house.

An examination of the record thus establishes that the jury had before it ample evidence that defendant compelled Martha to submit to intercourse with him "by threat that death [or] serious bodily injury . . . [would] be imminently inflicted on [her] or on [Cecile]." *See* 17–A M.R.S.A. § 252(1)(B)(2). The whole range of circumstances, of which defendant's brandishing of the handgun and striking Martha on the head with it are but a part, well justified the jury's finding beyond a reasonable doubt both (1) that defendant did in fact make a threat of the degree of gravity required by the rape statute, *State v. Colson*, Me., 405 A.2d 717 (1979), and (2) that the 15–year–old victim was in fact compelled to submit to intercourse by that threat.

Defendant makes a mechanistic argument to the effect that the acquittal on the enhancement factor had the consequence of wiping out all evidence of the presence and use of the handgun. Even if that were so, the other evidence of defendant's threats and of his capability of carrying them out, even absent the weapon, is adequate to support the jury's conclusion beyond a reasonable doubt. Furthermore, the only reason the presiding justice directed the partial acquittal was the technical one, irrelevant to the effectiveness of defendant's threats, that he was not satisfied that the evidence showed the handgun was in fact operable.[5] That reason for acquittal in no way detracts from the force of the evidence relating to the gun in adding to the threatening nature of all the circumstances under which Martha submitted to defendant's sexual demands.

The entry must be:

Appeal denied.

Judgment affirmed.

WERNICK, GODFREY and ROBERTS, JJ., did not sit.

---

5. See n.3 above. The presiding justice might not have ordered the acquittal on the "use of a firearm" enhancement factor if the trial had occurred after our decision in *State v. Millett*, Me., 392 A.2d 521, 527–28 (1978) (under pre-Code law, permissible inference of operability of "real revolver" in absence of evidence of inoperability). *See State v. Rowe*, Me., 397 A.2d 558, 561–62 (1979) (post-Code dictum).