**STATE of Maine**

v.

**Rexford PIERCE and Sandra Van Buren.**

Supreme Judicial Court of Maine.

Argued Sept. 21, 1981.

Decided Dec. 11, 1981.

John R. Atwood, Dist. Atty., Robert B. VanWyck, Asst. Dist. Atty. (orally), Bath, for plaintiff.

Roger S. Golin (orally) and Paul A. Weeks, Bath, for Pierce.

William C. Leonard (orally) and George M. Carlton, Jr., Bath, for VanBuren.

Before McKUSICK, C. J., GODFREY, NICHOLS, CARTER, VIOLETTE and WATHEN, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.

The defendants, Rexford Pierce and Sandra Van Buren, appeal from their convictions of gross sexual misconduct, 17–A M.R. S.A. § 253(2)(B) (Supp.1980),[1] a Class C crime. Van Buren, the mother of the prosecutrix, was convicted as an accomplice under 17–A M.R.S.A. § 57(3)(A) (Supp.1980).[2] In case docketed Sag–80–6, both defendants challenge the sufficiency of the evidence to support their convictions, argue that the indictments upon which they were tried were fatally defective, and claim that the trial court's denial of their motions for separate trials constituted an abuse of discretion. Defendant Pierce also challenges the trial court's instructions to the jury on the issues of consent and intent to threaten. In case docketed Law–81–326, both defendants argue that the trial court abused its discretion in denying their motions for a new trial based on recantations by the prosecutrix. We deny the appeal of defendant Pierce and affirm his conviction. We affirm the judgment of the trial court in denying Pierce a new trial. Because the defendant Van Buren was tried under a defective indictment, we sustain her appeal and therefore do not reach the issue presented by her motion for a new trial.

I.

Kathleen Van Buren, the prosecutrix, was fourteen years old when she chose to leave the home of her natural father in December 1978 to live with her natural mother, defendant Sandra Van Buren, and Sandra's boyfriend, defendant Rexford Pierce. Kathleen testified that on January 21, 1979, the defendants approached her in the bathroom and took her to the bedroom. Sandra told her not to worry. Pierce then massaged both Kathleen and Sandra.

---

1. § 253. Gross sexual misconduct

A person is guilty of gross sexual misconduct

1. If he engages in a sexual act with another person, not his spouse, and

A. He compels such other person to submit:

(1) by force and against the will of such other person; or

(2) by threat that death, serious bodily injury, or kidnapping will be imminently inflicted on such other person or on any other human being; or

B. The other person has not in fact attained his 14th birthday; or

2. If he engages in sexual intercourse or a sexual act with another person, not his spouse, and

A. He has substantially impaired the other person's power to appraise or control his sex acts by administering or employing drugs, intoxicants, or other similar means; or

B. He compels or induces the other to engage in such sexual intercourse or sexual act by any threat; or

C. The other person suffers from mental disability . . .

D. The other person is unconscious or otherwise physically incapable of resisting . . .

E. The other person is in official custody . . .

\* \* \* \* \* \*

4. Violation of subsection 1 is a Class A crime . . .

5. Violation of subsection 2, paragraphs A, C or E is a Class B crime. Violation of subsection 2, paragraphs B or D is a Class C crime.

2. § 57(3)(A) reads in pertinent part:

A person is an accomplice of another person in the commission of a crime if:

A. With the intent of promoting or facilitating the commission of the crime, he solicits such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in planning or committing the crime. A person is an accomplice under this subsection to any crime the commission of which was a reasonably foreseeable consequence of his conduct . . .

Pierce next announced his intention to have sexual intercourse with Kathleen, who said "No". The defendants went into the next room and argued. Kathleen could see them. Pierce raised his hand and told Sandra to get out of his way. Kathleen then submitted to intercourse with Pierce, because she was afraid that he would hit her mother. Sandra Van Buren helped Pierce complete the act of penetration. Both defendants, however, testified that this incident never occurred.

## II.

### A.

The indictment upon which defendant Pierce was tried reads as follows:

> That on or about the 21st day of January 1979 in the City of Bath, County of Sagadahoc, State of Maine, Rexford Pierce did engage in sexual intercourse with another person, not his spouse, namely: Kathleen Van Buren, and did induce the said Kathleen Van Buren to engage in such sexual intercourse by a threat to commit assault upon Sandra Van Buren.

Pierce argues that this language is insufficient, because it fails to allege facts indicating *why* the prosecutrix would have been induced to engage in sexual intercourse as a result of a threat made to a third person.

The object of an indictment is to fairly apprise the defendant of the offense of which he is accused so that he may properly prepare his defense to the charge and, if convicted or acquitted, make use of the judgment as a basis for a plea of former jeopardy. *State v. Charette*, 159 Me. 124, 126, 188 A.2d 898, 900 (1963). And, the test to be applied in determining whether the indictment is legally sufficient is, whether an accused of reasonable and normal intelligence would, by the language of the indictment, be adequately informed of the crime charged and the nature thereof, so that he could properly prepare his defense to the accusation and be protected against a subsequent prosecution for the same cause. *Id.* 159 Me. at 127, 188 A.2d at 900.

■ Hence, the long standing fundamental rule is that the validity of any indictment hinges on the question, whether the charge as contained therein sets out every essential element of the crime of which the defendant is accused. *State v. Blais*, Me., 391 A.2d 1198, 1201 (1978). One charged with crime has the constitutional right to demand that the charge be set forth with such particularity as will indicate with a reasonable degree of precision the offense with which he is charged. *State v. Lunney*, Me., 400 A.2d 759, 762 (1979).

Defendant Pierce relies upon *State v. Sondergaard*, Me., 316 A.2d 367 (1974), where this Court required precision in the indictment's description of a threat under the pre-Code crime of criminal threatening. There, we held that, where the threatening communication is made to a person other than the individual against whose person or property the promise of evil or menace of destruction is levelled by the communication, it is an essential element of a true substantive threat within the meaning of the then threatening communications statute (17 M.R.S.A. § 3701) that the threat be "made, published or sent" under circumstances indicative of the existence of a reasonable likelihood that some person will be caused "alarm" or "fear." Hence, the trial court's dismissal was properly affirmed as correct, where the indictment in *Sondergaard* failed to allege, in addition to the mere utterance of the threat, circumstances which showed the existence of a reasonable likelihood, in accordance with the ordinary course of human experience, that alarm and fear would probably be induced in some person. Since the reference statute, 17–A M.R.S.A. § 253(2)(B), requires for guilt of gross sexual misconduct that one who engages in sexual intercourse or a sexual act with another person, not his spouse, compel or induce the other to engage in such sexual intercourse or sexual act *by any threat*, Pierce argues that, as in *Sondergaard*, to be valid, an indictment charging gross sexual misconduct based on sexual intercourse induced by threat must explicitly carry allegations of the circumstances surrounding

the threat so as to indicate a reasonable likelihood of alarm or fright in the other person. We disagree.

■ The gross sexual misconduct statute does not criminalize the threatening communication as such, but rather the sexual intercourse or sexual act induced by *any* threat. In the case of a statute punishing "the fact of communication," this Court, as stated in *Sondergaard*, must be "acutely sensitive to those factors by which the Supreme Court of the United States has differentiated 'constitutionally protected speech' from 'communication' which, although 'speech,' is without constitutional safeguard," and, for that reason, must insist on the particulars of the threat so as to obviate any danger of impairment of the freedom of speech guarantees of the First-Fourteenth Amendments to the Constitution of the United States. The gross sexual misconduct statute presents no such constitutional danger zone. Therefore, Sondergaard does not control the situation in the instant case.

■ In *State v. Saucier*, Me., 421 A.2d 57 (1980), this Court upheld as sufficient a similar indictment charging the crime of gross sexual misconduct under 17–A M.R. S.A. § 253(2)(B) which did not particularize the specific circumstances under which the threat was made, nor the minutiae of the threat itself. We reaffirm Saucier in this regard. We do note that the present indictment did provide some particulars of the threat involved in its allegation that the defendant

> did induce the said Kathleen Van Buren to engage in such sexual intercourse by a threat *to commit assault upon Sandra Van Buren.*

The language of the indictment gave Pierce a clear identification of the exact offense charged and an instant indication of the very statute under which the indictment was found. Such is sufficient. *State v. Smith*, Me., 277 A.2d 481, 484 (1971); *Logan v. State*, Me., 263 A.2d 266, 269 (1970).

**B.**

**1.**

Defendant Pierce requested a jury instruction that a threat is "any menace of such a nature and extent as to unsettle the mind of the person on whom it operates, and to take away from his acts that free and voluntary action which alone constitutes consent." This instruction was not given, and Pierce argues that, due to its omission, the jury was not required to find the causal connection between the threat and the intercourse, which is necessary to support his conviction.

■ However, in *Saucier, supra*, this Court held that lack of consent is not an element of gross sexual misconduct under 17–A M.R.S.A. § 253(2)(B). The trial court charged the jury that "[w]here the offense of gross sexual misconduct is challenged, as in this case [*i.e.* a charge of gross sexual misconduct under section 253(2)(B)], force and consent are by definition not an issue." This is a correct statement of the law.

The trial court then went on to make more explicit the causal connection between the threat and the intercourse, which Pierce claims was missing, when he instructed the jury as follows:

> Under our law the threat must have been intended to compel or induce another person to engage in sexual intercourse, sexual intercourse if you find based on all of your evidence was a direct and foreseeable result of the threat. If you find in fact that a threat was made based on all of the evidence, the jury must find an offense as relates to the threat was committed by the defendant intentionally or knowingly.

■ Conviction of gross sexual misconduct carries no requirement of a culpable mental state. *State v. Saucier, supra*, 412 A.2d at 59. Proof of specific intent to induce submission by means of a threat, which Pierce argues is necessary, would be tantamount to proof of a culpable mental state. Such is not the law. While the jury instruction quoted above *may* be read to require the jury to find such intent, it is an

error in Pierce's favor. It is not necessarily inconsistent with the court's later instruction that "the crime of gross sexual misconduct . . . neither explicitly or implicitly requires proof of intent." Indeed, although not too well articulated, it served the purpose of instructing the jury that a "person cannot accidentally or innocently induce another person to engage in sexual intercourse by means of a threat." *State v. Saucier, supra,* at 59. Pierce does not argue on this appeal that the jury was unduly confused by these instructions, and we find no manifest error in that regard.

#### 2.

■ Also, Pierce did not request an instruction to the effect that Kathleen's fear that he would hurt her mother must have been reasonable under the circumstances in order for the jury to convict him. Unless the omission of such an instruction was manifest error, we must uphold the jury's verdict. Where no request was made at trial for the particularized instruction which the defendant now says should have been given, the failure to inform the jury on the particular matter will not constitute reversible error, unless, when viewed with the charge as a whole, the omission of the reference information was highly prejudicial to the defendant and so tainted the proceeding as virtually to deprive the aggrieved party of a fair trial. *State v. Doughty,* Me., 399 A.2d 1319, 1326 (1979). Rules 30(b) and 52(a) and (b), M.R.Crim.P. Such was not the case here. The jury could have found from the evidence that Kathleen herself did fear that Pierce would harm her mother, as she testified, and that this fear caused her to submit.

While we do not decide whether Kathleen's fear was reasonable under the circumstances, we note that in previous rape cases we have found acceptable instructions which focused on the actual fear induced in the victim rather than upon the reasonableness of that fear. *See, e.g., State v. Lindsey,* Me., 413 A.2d 506 (1980); *State v. Mower,* Me., 298 A.2d 759 (1973). *Cf. State v. Foley,* Me., 392 A.2d 1094 (1978). We

have closely examined the evidence presented by the State in this case. Because a jury could have drawn a rational conclusion based on that evidence, that a reasonable person in Kathleen's position would have submitted out of fear, we cannot say that there is "a reasonable possibility" that such an instruction, even if given, "would have resulted in a different verdict." *State v. Deveau,* Me., 354 A.2d 389, 392 (1976). There was no manifest error.

#### C.

The only testimony presented by the State about the events of the night of January 21, 1979, is that of the prosecutrix, Kathleen Van Buren. Defendant Pierce argues that it is insufficient to support the jury's verdict.

■ If the testimony of a complaining juvenile witness in a gross sexual misconduct trial is not contradictory, unreasonable, or incredible, this Court will not substitute its judgment as to the weight to be given that testimony for the judgment of the finder of fact at trial. *State v. Morgan,* Me., 379 A.2d 728, 730 (1977). *See also State v. Kingsbury,* Me., 399 A.2d 873 (1979). Pierce does not argue that Kathleen's testimony was contradictory or incredible. He claims that there was no evidence that the threat was intended to cause Kathleen to submit. As we have pointed out above, this is an incorrect interpretation of the statute. The jury could have inferred from Kathleen's testimony that Pierce by his related conduct intended the act of threatening Sandra Van Buren with evident bodily injury and that, by doing so, he did put Kathleen to a choice "between acceding to the sexual activity or enduring threatened odious consequences." *State v. Saucier, supra,* 421 A.2d at 58. This is not the case where we could say that no rational jury could have found Pierce guilty beyond a reasonable doubt based on Kathleen's testimony.

#### III.

Both defendants claim that denial of their motions to sever their trials was an

abuse of discretion by the trial court. Pierce argues that clear prejudice resulted from the failure to sever, contending that confusing instructions were given to the jury and "mutually exclusive" verdicts were returned. We are governed in considering this argument by the standard of *State v. Wing*, Me., 294 A.2d 418 (1972), which requires a defendant seeking reversal on this ground to show both clear prejudice and an abuse of discretion. *Id.* at 420.

The arguably confusing jury instructions cited by Pierce and discussed above were more favorable to him than necessary. These instructions were not given as a result of joinder; they could have been given if Pierce were tried alone. They do not provide evidence of clear prejudice to Pierce.

■ Pierce also argues that his conviction involved a threat against Sandra Van Buren, who was convicted as an accomplice to his crime, and that the verdicts are mutually exclusive. But it is established Maine law that "[v]erdicts as between two defendants tried together need not show a rational consistency." *State v. Mower*, Me., 317 A.2d 807, 813 (1974). There is no evidence of clear prejudice to Pierce in the fact that he was convicted of a crime which involved threatening his accomplice. The verdicts may even be rationally consistent, because the jury could have found that Sandra Van Buren was not put in fear by Pierce's threat.

■ Nor did Pierce attempt to present a defense which was contradictory to that of Sandra Van Buren. Both defendants denied that the incident described by Kathleen had occurred. The trial court did not abuse its discretion in deciding that the indictments did not carry sufficient potential for prejudice, if the defendants were tried together, to require severance.

## IV.

After filing their appeal of their convictions, both defendants moved for a new trial under M.R.Crim.P. 33 on the basis of newly discovered evidence. Their appeal from the denial of that motion was consolidated with their appeal on the merits at oral argument.

At the hearing on this motion in the trial court, Kathleen testified that, after learning that her mother would be going to jail as a result of the trial, she had told several people that her testimony at the trial was false. Under oath at the hearing, she then swore that her testimony at the trial had been true and that her recantations had been made, because she had been informed that her mother was going to jail. At the time of the hearing, Kathleen had not been living with her mother for at least a year.

■ The decision of the Superior Court to deny Pierce's motion must stand unless clearly erroneous. *State v. Collins*, Me., 416 A.2d 732, 733 (1980). The trial court's "responsibility of hearing the new testimony, observing the conduct of the witness, weighing the value of the evidence and its potential for resulting in a different verdict if presented at a new trial is essentially a determination of fact." *State v. Sawyer*, Me., 314 A.2d 830, 834 (1974). Thus, even the recantation under oath of the sole trial witness is insufficient to justify a new trial, if the judge hearing the recantation finds it to be false. *Swett v. State*, Me., 268 A.2d 814, 816 (1970).

■ Here, Kathleen's recantations were not under oath. Such evidence is merely impeaching evidence. *State v. Heald*, Me., 395 A.2d 457, 458 (1978). Since recantation has been considered a most unreliable form of evidence, *State v. Dodge*, 124 Me. 243, 249, 127 A. 899, 902 (1925), we have always required under these circumstances that the defendant seeking a new trial make a clear showing that a new jury would probably reach an opposite result, if it learned of the recantation. *State v. Collins*, Me., 416 A.2d 732 (1980); *State v. Heald, supra*. This case is similar to *Collins*, in that a "key" witness for the State has recanted in unsworn statements but affirms her original testimony under oath at the hearing on the motion for a new trial. The trial court found that Pierce had failed to show clearly the probability of a different result, and that finding was not clearly erroneous.

### V.

The indictment upon which Sandra Van Buren was tried reads as follows:

That on or about the 21st day of January 1979 in the City of Bath, County of Sagadahoc, State of Maine, Sandra Van Buren, with the intent of promoting or facilitating the commission of the crime of Gross Sexual Misconduct upon Kathleen Van Buren, did aid or agree to aid or attempt to aid Rexford Pierce in planning or committing the crime of Gross Sexual Misconduct upon the said Kathleen Van Buren, the commission of said crime being the reasonably forseeable consequence of her, the said Sandra Van Buren's conduct.

She argues that this indictment is fatally defective, because it fails to identify which of the several types of gross sexual misconduct enumerated in 17–A M.R.S.A. § 253 and carrying various penalties, is the basis for this all-embracing charge. The statute, indeed, specifies distinct factual circumstances under which the commission of the crime of gross sexual misconduct may take place, the respective attendant circumstances classifying it as a Class A, Class B or Class C crime.[3] Since she is accused in the instant indictment of aiding Rexford Pierce in general terms in the planning or commission of the crime of gross sexual misconduct upon Kathleen Van Buren without any allegations therein respecting the particular circumstances surrounding the alleged criminal activity, so that the exact crime of which she stands charged cannot be identified, Sandra Van Buren suggests that such an indictment makes it impossible for her adequately to prepare her defense.

3. The penalty for a Class A crime is imprisonment for a period not to exceed 20 years, for a Class B crime, for a period not to exceed 10 years and for a Class C crime, for a period not to exceed 5 years. 17–A M.R.S.A. § 1252.

4. Rule 7(c), M.R.Crim.P. provides in pertinent part:

The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to

The State responds that the insertion at the top right hand corner of this indictment of the following legend:

### INDICTMENT FOR VIOLATION

### OF M.R.S.A. SECTION

### 17 A MRSA 253

#### Gross Sexual Misconduct

### CLASS C CRIME

purportedly pursuant to Rule 7(c), M.R. Crim.P.,[4] reduces the defendant's claimed misgivings by confining the accusation through such reference to the only two possible subsections which under section 253 carry the Class C crime penalties, to wit, sub-§ 253(2)(B) or sub-§ 253(2)(D). See 17–A M.R.S.A. § 253(5). The State concludes that the reference caption sufficiently informed the defendant of the crime charged, so that she could adequately prepare her defense and, if convicted, use the conviction as a basis for a plea of double jeopardy, should the occasion arise.[5] *State v. Wing*, Me., 426 A.2d 1375 (1981). We disagree.

The statutory citation, captioned as it is in this case outside the body of the charge found by the grand jury, will not "save" an otherwise fatally defective indictment. The caption of an indictment is no part of the grand jury's finding. *State v. Conley*, 39 Me. 78 (1854). The entries therein form no part of the indictment and neither add to nor take away from the legal effect of the charge as contained in the body of the indictment. *United States v. Nixon*, 235 U.S. 231, 35 S.Ct. 49, 59 L.Ed. 207 (1914); *Williams v. United States*, 168 U.S. 382, 18 S.Ct. 92, 42 L.Ed. 509 (1897).

have violated. Error in the citation of a statute or its omission shall not be grounds for the dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

5. We are not dealing here with a reference to the statutory citation inserted in the body of the criminal charge itself. We express no opinion respecting such an eventuality.

 Considering the indictment without reference to its caption as we must, we find it fatally deficient in not alleging the attendant circumstances which form an integral part of the definition of the crime of gross sexual misconduct and serve to identify the particular crime with which the accused is charged and the distinct penalty to which she is exposed on conviction. Although technical procedural requirements have been greatly simplified by our rules of criminal procedure, there was no intent in their formulation to abandon the requirement that the essential constituting facts of a crime be stated in the complaint or indictment. *See State v. White*, Me., 280 A.2d 810 (1971); *Russell v. United States*, 369 U.S. 749, 766, 82 S.Ct. 1038, 1048, 8 L.Ed.2d 240 (1962). Undoubtedly, the language of a statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged. *Russell v. United States, supra*, 369 U.S. at 765, 82 S.Ct. at 1048, and cases cited.

In *State v. Tracy*, Me., 400 A.2d 758, 759 (1979), we said:

In view of the careful draftsmanship of the Maine Criminal Code, Title 17–A, *and the emphasis on precise definitions*, it is both reasonable and desirable that the statutory language be used in criminal pleadings, *provided that sufficient additional facts are alleged to apprise the accused adequately of the criminal act charged.* (Emphasis added).

In *State v. Colson*, Me., 405 A.2d 717 (1979), we concluded that section 253 under the label "gross sexual misconduct" defined several separate and distinct crimes, depending upon the particular attendant circumstances involved in the prohibited criminal activity. At page 719, we said that the Code drafters

specified exactly what kinds of threats operating as the coercive agent compelling sexual intercourse or sexual acts *must be alleged and proved* to support a conviction of rape or the related section 253 crime. (Emphasis added).

This is consistent with the provisions of 17–A § 5, which in pertinent part reads as follows:

§ 5. *Pleading and proof*

1. No person may be convicted of a crime unless each element of the crime is proved beyond a reasonable doubt. "Element of the crime" means: The forbidden conduct; *the attendant circumstances specified in the definition of the crime*; the intention, knowledge, recklessness or negligence as may be required; and any required result. (Emphasis supplied).

We note that we said in *State v. Luce*, Me., 394 A.2d 770 (1978) at p. 774, that "facts which define the severity of an offense are not *elements* of the crime." But we added that those additional facts which in *Luce* affected the severity of the offense charged, though they should be pleaded [they were not pleaded in the instant case], do not establish the parameters of the offense nor define the basic crime with respect to what is necessarily included therein. The problem in *Luce* was different and we hold that the quoted generalized statement is not applicable to the instant case.

A person accused of crime has a constitutional right to know from the face of the criminal pleading the exact offense charged against him. The language of the formal accusation must be such that the identity of the criminal statute allegedly violated may be readily ascertained; compliance with this constitutional requirement is not achieved if the indictment does not aver all the essential elements of the crime charged, including punishment-enhancement factors, explicitly or by the use of equivalent terms. *See State v. Smith*, Me., 277 A.2d 481 (1971); *State v. Ward*, 156 Me. 59, 158 A.2d 869 (1960); *State v. Beckwith*, 135 Me. 423, 198 A. 739 (1938); *State v. Crouse*, 117 Me. 363, 104 A. 525 (1918). *See also State v. Satow*, Me., 392 A.2d 546 (1978).

From the language of this indictment, Sandra Van Buren had no indication whatsoever of the specific type of gross sexual misconduct she was being accused of participating in as an accomplice. Without more

specificity respecting the attendant circumstances, she could be faced at trial with proof of aiding in the commission of gross sexual misconduct by Pierce in any one of the diverse types of the prohibited misbehavior, whether of the Class A, Class B or Class C crime variety, with exposure to a wide range of gradated penalties, if convicted. Principles of fundamental fairness decry the use of such process in a criminal justice system.

 The availability of a bill of particulars or the feasibility of discovery under Rule 16, M.R.Crim.P. will not "save" a fatally defective indictment. *State v. Toppi*, Me., 275 A.2d 805 (1971). *Cf. State v. Wing*, Me., 426 A.2d 1375 (1981). The constitutional insufficiency of an indictment to charge a criminal offense is regarded by this Court as a jurisdictional matter. *State v. Lunney*, Me., 400 A.2d 759 (1979); *State v. Porter*, Me, 384 A.2d 429, 433 (1978).

 Nor can the Van Buren indictment be upheld because of the Pierce indictment. It was not necessary that the State try these two defendants together. A defendant's indictment must inform *that defendant* adequately of the crime charged and the nature thereof. *State v. Charette*, 159 Me. 124, 188 A.2d 898 (1963). The Van Buren indictment, standing alone, does not meet this test. Furthermore, the general rule is that each count in a single indictment must be regarded as if it were a separate indictment and must be sufficient in itself; in other words, each count must stand or fall upon its own allegations without reference to other counts, unless the necessary averments contained in the other counts are clearly and specifically incorporated by explicit reference in the count under attack. *Walker v. United States*, 9th Cir., 176 F.2d 796 (1949); *Martinez v. People*, 163 Colo. 503, 507, 431 P.2d 765, 767 (1967). Since each count of a single indictment against a lone defendant must embody a distinct and complete accusation of the crime it purports to charge, *i.e.* must be sufficient in itself, a fortiori each indictment against different individuals, although tried together, must be tested for legal sufficiency on its own without reference to the other.

## VI.

Because we find that defendant Van Buren was tried upon an insufficient indictment, we need not consider her challenge to the sufficiency of the evidence or the denial of her motion to sever her trial from that of Pierce. Nor do we reach her appeal from the denial of her motion for new trial.

The entry will be:

In SAG–80–6, appeal of defendant Rexford Pierce denied.

Judgment of conviction affirmed.

In SAG–80–6, appeal of defendant Sandra Van Buren sustained.

Judgment of conviction vacated. Remanded for further proceedings consistent with the opinion herein.

In LAW–81–326, appeal denied and judgment affirmed as to Rexford Pierce.

In LAW–81–326, appeal dismissed for mootness as to Sandra Van Buren.

All concurring.