STATE of Maine

v.

Safet LIKAY.

Supreme Judicial Court of Maine.

Argued March 9, 1983.

Decided April 12, 1983.

John Atwood, Dist. Atty. (orally), Rockland, for plaintiff.

William Thomas Hyde (orally), Skowhegan, for defendant.

Before McKUSICK, C.J., and GODFREY, CARTER, and VIOLETTE, JJ.

McKUSICK, Chief Justice.

Defendant Safet Likay appeals his conviction, after a jury trial in Superior Court (Kennebec County), on two charges of attempted murder, 17–A M.R.S.A. § 152 (1983), and one charge of criminal threatening, 17–A M.R.S.A. § 209 (1983). Defendant had been first indicted in November, 1980, for attempted murder of Steven Peterson, his attorney in a divorce action; and in July, 1981, he had been indicted for attempted murder of Peter Sulides, then his attorney in the first attempted murder case, and for criminal threatening of Sulides's secretary. The two indictments, returned in Knox County, were consolidated for trial; and venue was changed to Kennebec County. We find no merit in defendant's contentions on appeal.

## I.

■ Likay first contends that the presiding justice incorrectly charged the jury on the issue of abnormal mental condition as it relates to the culpable mental state required for each of the crimes with which he was charged. Because Likay's trial counsel did not object to the jury instruc-

tions at the time they were given, as required by M.R.Crim.P. 30(b), we review those instructions only for obvious error. M.R.Crim.P. 52(b). Misleading or otherwise defective jury instructions constitute obvious error only if, when the charge is viewed as a whole, the alleged error "so tainted the proceedings as to virtually deprive the aggrieved party of a fair trial." *State v. Pierce*, 438 A.2d 247, 252 (Me.1981).

■ Likay could be convicted only if he had acted intentionally or knowingly. *See* 17–A M.R.S.A. §§ 152, 201(1)(A), 209. The State had the burden of proving that required culpable state of mind beyond a reasonable doubt. *Id.*, § 32. Section 38 of the Criminal Code [1] provides:

> Evidence of an abnormal condition of the mind may raise a reasonable doubt as to the existence of a required culpable state of mind.

In a case where there is adduced evidence of abnormality in the defendant's mental condition that has bearing on the culpable mental state requisite for the crime with which he is charged, that defendant is entitled to a jury instruction in terms of section 38, and it must be made clear that the burden remains on the prosecution to prove the culpable state of mind beyond a reasonable doubt. *State v. Burnham*, 406 A.2d 889, 896 (Me.1979). As the Law Court noted in *Burnham*:

> This instruction is particularly important in the unitary trial [on pleas both of not guilty and of not guilty by reason of insanity]. Without it, the instructions on the affirmative defense of insanity may mislead the jury as to the prosecution's burden of proof on "culpable state of mind" when the evidence tending to negate "culpable state of mind" is the same

---

1. 17–A M.R.S.A. 38 (1983) was enacted by P.L. 1981, ch. 324, § 14 to replace, without any apparent substantive change, 17–A M.R.S.A. § 58(1–A) (Pamph.1980), which read:

 In a prosecution for a crime which may be committed intentionally, knowingly or reck-

lessly, where such culpable state of mind is a necessary element, the existence of a reasonable doubt as to such state of mind may be established by evidence of an abnormal condition of mind.

evidence which goes to establish the "insanity defense."

*Id.* (footnote omitted).

The presiding justice at Likay's unitary trial instructed the jury, in part, as follows:

You may also consider whether, at the time of the offense alleged, the defendant had an abnormal condition of mind which affected his capacity to act knowingly or intentionally.

Likay asserts that the instructions were deficient in two respects. First, he quarrels with the presiding justice's use of the word "may" in the portion of the instructions quoted. Likay maintains that the justice erred in not telling the jury that they *must* consider whether he had an abnormal condition of mind that affected his capacity to act knowingly and intentionally. *See State v. Bridges,* 413 A.2d 937 (Me.1980). Likay's second criticism of the jury instructions is that they did not emphasize that the burden of proving culpable mental state rests with the State.

 Although the portion of the instructions to which Likay takes exception is perhaps less than perfect,[2] we find no reversible error in the jury instructions when read as a whole. *See State v. Pierce,* 438 A.2d at 252; *State v. Doughty,* 399 A.2d 1319, 1326 (Me.1979). In *State v. Bridges,* the Law Court held that the factfinder "*must consider any evidence of mental abnormality* in order to determine whether a reasonable doubt exists as to the defendant's culpable state of mind at the time of the crime." *Id.* at 941 (emphasis added). An examination of the challenged sentence in the context of the whole of the instructions demonstrates that the presiding justice did not violate the *Bridges* mandate. The whole charge clearly *required* the jurors to consider all the evidence, and it also told them that they

were entitled, depending upon whether they believed that the defendant *did* have an abnormal condition of mind, to conclude that such condition raised a reasonable doubt as to the defendant's acting knowingly or intentionally at the time of the alleged crimes. Furthermore, the charge read as a whole leaves no uncertainty that the burden of proof rested upon the State to prove all elements of the crimes, including defendant's culpable mental state.

By no stretch could an objective reader of the present record conclude reasonably that any shortcoming in one sentence of the charge, that relating to the section 38 issue, "so tainted the proceeding as to virtually deprive the aggrieved party of a fair trial." *State v. Pierce,* 438 A.2d at 252. Likay's first appellate contention thus offers no basis for reversing his conviction.

II.

 We also find no merit in Likay's remaining contention on appeal that the evidence compelled a jury verdict of not guilty by reason of insanity because only he produced witnesses to testify on that issue. The Law Court has previously considered and rejected a similar argument. In *State v. Ellingwood,* 409 A.2d 641 (Me.1979), the Law Court stated:

The fact-finder is not bound by the conclusions of psychiatrists who testify concerning their opinions of the mental condition of a defendant. Where the facts and assumptions underlying expert opinions are amply exposed during their testimony in the course of trial, the fact-finder is entitled to draw his own ultimate conclusions.

A judgment of acquittal will not be granted on this ground where the record contains testimony, other than that of

---

2. A more carefully worded instruction can eliminate any possible question of misunderstanding on the part of a jury. *State v. Burnham,* 406 A.2d 889, 896 n. 15 (Me.1979), uses the word "may," but in a critically different context than did the presiding justice in the case at bar. *Burnham* states that "the existence of a reasonable doubt as to [a culpable]

state of mind *may* be established by evidence of an abnormal condition of mind." *Id.* (emphasis added). 17–A M.R.S.A. § 38 uses the word "may" in a similar way. An instruction that tracks either the language of the *Burnham* footnote or the language of section 38 is unexceptionable.

experts, from which the fact-finder could reasonably conclude that the defendant did not lack substantial capacity to conform his conduct to the requirements of the law or to appreciate the wrongfulness of his conduct.

*Id.* at 644 (citations omitted). The facts and assumptions underlying the opinions of the two experts who testified for Likay were exposed at trial, and during cross-examination the prosecution did point out defects and inconsistencies in the findings upon which the expert psychiatric testimony was based. In addition, witnesses who observed Likay just before, during, and after the two incidents in question testified that, apart from the commission of the crimes, Likay acted in a normal fashion. In sum, given the evidence presented, the jury was entitled to reject Likay's insanity defense. As the Law Court made clear in *State v. Foster,* 405 A.2d 726 (Me.1979), "[a]lthough experts may describe the mental and emotional condition of an accused at the relevant time, it is the responsibility of the jury to decide whether the criminal conduct was the product of mental disease or defect." *Id.* at 731.

The entry must be:

Judgment affirmed.

All concurring.